BEFORE THE FIRST DIVISION, JUNE 4, 1948

**No. 52364.**—Hensel, Bruckmann & Lorbacher, Inc. *v.* United States, protest 98770–K (New York).

OLIVER, Presiding Judge: This suit by the plaintiff is for the recovery of certain customs duty alleged to have been improperly exacted on an importation of an article classified by the collector at the port of New York as "a spectrometer or as an optical measuring or testing instrument" and assessed for duty at the rate of 60 percent ad valorem under paragraph 228 (a), Tariff Act of 1930. As originally filed, the protest claimed the article to be properly dutiable as a "scientific instrument" at the rate of 40 percent ad valorem under paragraph 360, and by timely amendment alternative claims were added for duty at the rate of 20 percent ad valorem under said paragraph 360, as modified by the trade agreement with Switzerland, T. D. 48093, or at 45 percent ad valorem under the provision in paragraph 228 (b) of the same act for "optical instruments." The provisions of the tariff act, so far as pertinent, are as follows:

PAR. 228. (a) Spectographs, spectrometers * * * optical measuring or optical testing instruments, * * * and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

(b) Azimuth mirrors * * * all optical instruments * * * and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 360. Scientific and laboratory instruments * * * and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * *: *Provided*, That all articles specified in this paragraph, when imported, shall have the name of the maker or purchaser and beneath the same the name of the country of origin die sunk conspicuously and indelibly on the outside * * *.

PAR. 360 [as modified by the trade agreement with Switzerland, T. D. 48093]:

Laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear, and parts of the foregoing; any of the foregoing wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for . . . 20 per cent ad valorem.

The collector, in response to the plaintiff's exception to the classification made, conceded the article at bar to be a scientific instrument within the meaning of paragraph 360 but stated that "this paragraph carries the proviso, 'not specially provided for', while paragraph 228 (a), under which it is specifically provided for, either as a spectrometer or as an optical measuring instrument, does not contain this proviso." Concededly, the imported article is a "scientific instrument" under paragraph 360, unless it is a "spectrometer" or an "optical measuring or optical testing instrument," specifically provided for, under paragraph 288 (a).

The case was submitted for decision upon a written stipulation between the respective parties herein which conceded, firstly, that the imported article is in chief value of metal, not plated with gold, silver, or platinum, and when imported had the name of the maker and beneath the same the name of the country of origin die sunk conspicuously and indelibly on the outside. It was further

stipulated and agreed that plaintiff's witness, Professor Athelstan F. Spilhaus, whose full qualifications to give such testimony are enumerated on pages 2, 3, and 4 of the stipulation which is made a part of our decision herein, would testify, as outlined in the stipulation, as if he had duly testified as such a witness upon the trial of this case. Such testimony, so far as pertinent to the issue before us, set forth in the respective pages of the stipulation, is as follows:

Ozone has the property of absorbing strongly certain wave lengths of light in the ultra violet region. The more ozone present, the more light is absorbed. Thus by taking two wave lengths of light in the ultra violet, one of which is very strongly absorbed by ozone and the other of which is little or not at all absorbed, the amount of ozone may be measured by the relative intensities of light in these two wave lengths as it reaches the ground after passing through the ozone layer. Because we are dealing with ultra violet light, the device embodies quartz windows, prisms and lens system. It also utilizes a rotating shutter, similar in effect to the shutter of a motion picture camera, the purpose of this being to allow the two wave lengths to fall alternately onto a photo-electric cell. The photo-electric cell is connected to a four-stage electronic amplifier which is in effect identical to the amplifier of an ordinary radio. The amplified current, after it has become rectified by direct current, is made to give an indication on an ordinary galvanometer. From this indication, measurements of ozone in the upper atmosphere are obtained. [Stipulation pp. 5, 6.]

A spectrometer is an instrument used for observing the spectrum; measuring the deviations of refractive rays; determining wave lengths; and measuring angles between two faces of a prism. The imported instrument does not perform any of these functions. Its sole purpose is to measure ozone in the upper atmosphere. [Stipulation p. 7.]

* * * The fact that optical parts are used as a subordinate part of the equipment and the fact that invisible portions of the light spectrum are incidentally utilized in the measurement of ozone content are coincidental because an ozonometer [which the imported instrument is now called] might be built utilizing entirely different principles. [Stipulation p. 6.]

The instrument at bar is in no way an aid to vision. The invisible rays of sunlight which are utilized are merely used because they happen to be absorbed or not by ozone. The only visible indication on this instrument is the deflection of a galvanometer, from which deflection the concentration of ozone is derived by the use of mathematics (stipulation p. 6). The optical system of the imported instrument is used only to segregate the desired wave lengths and concentrate them electrically upon the photoelectric cell. The optical system of the device at bar is neither used nor designed to observe the spectrum, nor to measure the deviation of refractive rays, nor to determine wave lengths, nor to measure angles between two faces of a prism (stipulation pp. 7, 8).

A necessary prerequisite to classifying the article at bar as an "optical instrument" is that it "aids vision." (*United States* v. *Bliss*, 6 Ct. Cust. Appls. 433, T. D. 35980; *G. W. Sheldon* v. *United States*, T. D. 42508, 52 Treas. Dec. 454.) The testimony of the plaintiff's witness indicates that the instrument before us is in no way an aid to vision. The invisible rays of sunlight which are utilized are merely used because they happen to be absorbed or not by ozone. The fact that an instrument may have an optical system in the form of lenses, prisms, and mirrors, and that it uses principles established in the science of optics, does not make it an optical instrument. We are of the opinion, therefore, that the imported article is not an "optical instrument" as contemplated by the provisions of paragraph 228 (b) of the tariff act. Neither is the instrument before us an optical measuring or optical testing instrument so as to fall within the provisions of paragraph 228 (a) of the Tariff Act of 1930.

An optical measuring or optical testing instrument is an optical instrument used for the purpose of measuring or testing (*United States* v. *Arthur H. Thomas Co.*, 22 C. C. P. A. 120, T. D. 47105). The measurement of the ozone in the upper

atmosphere by the device before us is accomplished by measuring the radiant energy by electrical means of two wave lengths of invisible sunlight in the ultraviolet region. The optical parts used here are a subordinate part of the equipment and do not aid the human eye in measurement.

The instrument before us is concededly a scientific instrument and we are of the opinion that it is not specially provided for under paragraph 228 (a) of the tariff act. The term "scientific instrument" is a generic term. Its limitations are well-established and the instrument must be used in pure, as distinguished from applied, science. (*United States* v. *C. H. Stoelting Co.*, 21 C. C. P. A. 588, T. D. 46995.) The description of the instrument itself, the fact that it is a unique instrument specially designed to measure ozone in the upper atmosphere, and that it was imported for New York University especially for the purpose of scientific studies of the relation between ozone and atmospheric pressure distribution, are in our opinion, sufficient reasons to establish the purely scientific character of the instrument. The name "spectrometer" originally given to the instument at bar is not supposed to be technical. Actually, the imported instrument is an ozonometer and does not fall within the meaning of the term "spectrometers" in paragraph 228 (a).

We observe that the Swiss Trade Agreement (T. D. 48093) did not modify the provision in paragraph 360 as enacted with respect to scientific instruments, but only with respect to certain laboratory instruments, apparatus, or appliances, and parts thereof, into which category the article at bar does not fall. We also observe that a further modification of the same paragraph by the trade agreement with the United Kingdom, T. D. 49753, was limited to certain pyrometer and moisture testers, and parts thereof. Upon the record and the authorities cited herein we are therefore of opinion that the imported instrument is a scientific instrument within the meaning of that term as used in paragraph 360 and, insofar as the rate applicable thereto has not been modified by any trade agreement, it is properly dutiable at 40 percent ad valorem as claimed in the protest.

Judgment will be rendered accordingly.