Stoeger *v.* United States (No. 2933)[1]

United States Court of Customs Appeals, November 14, 1927

*Allan R. Brown* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.

[1] T. D. 42472.

292

[Oral argument October 13, 1927, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant has appealed from the judgment of the United States Customs Court overruling his protest and sustaining the collector's classification of certain pistols and pistol magazines.

The merchandise covered by protest 99472 consists of pistols valued at less than $4 each, which were returned for duty at $1.25 each, and in addition thereto, 55 per centum ad valorem under paragraph 366, tariff act, 1922.

Protest 22896–G covered automatic Mauser pistols valued at between $4 and $8 each and returned for duty at $2.50 each, and in addition thereto, 55 per centum ad valorem under paragraph 366, tariff act, 1922.

In the above protest also was involved a consideration of the proper classification of merchandise described as drum magazines for Luger pistols, which were also classified and held to be parts of pistols under said paragraph 366, tariff act, 1922.

The protests claimed the pistols to be dutiable under paragraph 363, tariff act, 1922, as side arms at 50 per centum ad valorem, or under paragraph 399, same act, at 40 per centum ad valorem, as an article in chief value of metal. The magazines were claimed to be dutiable under paragraph 399.

Paragraphs 366, 363, and 399 of the Tariff Act of 1922 read as follows:

PAR. 366. Pistols: Automatic, magazine, or revolving, and parts thereof and fittings therefor, valued at not more than $4 each, $1.25 each; valued at more than $4 and not more than $8 each, $2.50 each; valued at more than $8 each, $3.50 each; and in addition thereto, on all of the foregoing, 55 per centum ad valorem.

PAR. 363. Sword blades, and swords and side arms, irrespective of quality or use, wholly or in part of metal, 50 per centum ad valorem.

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

It is the position of the importer, appellant, that the merchandise was in fact side arms, and was by the testimony in the record proved to be so used; and that the Board of United States General Appraisers (now United States Customs Court), in T. D. 24621, G. A. 5404, 6 Treas. Dec. 720, and T. D. 28805, Abstract 18262, 15 Treas. Dec. 195, held them so to be.

Importer concedes that the merchandise, other than the magazines is pistols, but contends that it is also side arms, and that "side arms" in paragraph 363 is more apt and specific in relation to the pistols than is the provision for pistols.

Furthermore, it is urged, in support of appellant's position, that all pistols are not side arms, and that the construction contended for would not nullify the provision for pistols; that the provision for side arms is not limited by the clause "not specially provided for"; and that the *eo nomine* provision for pistols under the *eo nomine* rule is not controlling as against the provision for side arms, which is a designation according to use.

As to the drum magazines, importer argues that they should be classified under paragraph 399, *supra*, and the reasons assigned are ingenious. We quote from appellant's brief:

Let us assume in the first place that the magazines in question are parts of the Army pistols at bar. Then if these Army pistols are not dutiable as pistols, but as side arms under paragraph 363, the magazines, even if they are parts of the pistols, are not dutiable, as parts for there is no provision for parts of side arms. The magazines are accordingly relegated for classification to the residuary provision for manufactures of metal.

It is further urged that the magazines are not parts of pistols or parts of side arms at all, "but are accessories sometimes used in connection with pistols for a special purpose."

There is evidence in the record that the pistols in controversy were used in the German Army and are standard for the German police, and that substantially the same kind of pistols are worn by Army officers here. We do not deem it necessary to determine whether the record shows how these pistols, in this country or elsewhere, are worn or carried. The Government has pointed out that there was no attempt, at any time, to show chief use of the pistols as side arms in the United States of America, and cite *Taylor et al.* v. *United States*, 3 Ct. Cust. Appls. 498, p. 500.

If it were conceded that the pistols in controversy were side arms, we think the collector and the court below properly held them dutiable under paragraph 363 as pistols.

However, if it were conceded that the pistols are side arms and that the rule of classification by use applies to them, and if it were further conceded that the rule of classification by use under ordinary circumstances controls as against the *eo nomine* provision rule, we think the legislative history of the various tariff paragraphs pertaining to this kind of importation is unusually convincing that Congress intended that this particular kind of merchandise should be classified under paragraph 366 as pistols.

Rules for statutory construction are the instruments used by courts in an attempt to determine the intent of the legislature.

The reasons for and the force and effect of the rule applicable to classification by use is too well understood in customs jurisprudence to warrant comment here. But in the consideration of its controlling effect, it must not be overlooked that the master rule of statutory construction is to arrive at the intent of the legislature if such intent is in doubt. Vol. I, Story on Constitution of the United States, p. 383; 36 Cyc. 1106.

In arriving at such intent, the rule adopted by the courts which pertains to classification by use may or may not be controlling, depending entirely upon the existence or nonexistence of more convincing circumstances evidencing the true intent of the legislature. The highest courts of the country have often declared in substance, if not in exact words, that rules of construction are servants and not masters.

The meaning of words used may not be ambiguous so as to call for construction, but the intent of Congress must be ascertained and declared by the courts if unambiguous words are used in an ambiguous manner. Assuming the merchandise involved, in this case, is side arms, and at the same time pistols, doubt has arisen as to which rate of duty Congress intended should apply. If extraneous connected circumstances, including the history of the legislation and similar legislation, and the consideration of the context of the whole act and other related acts, as well as the effects and consequences of the different interpretations that might be placed on the law, point out unmistakably to the court the intentions of the framers of the act, no rule of construction can properly be interpreted to defeat such intent.

T. D. 24621 and T. D. 28805, *supra,* concerned the classification of so-called horse pistols in the first case, and automatic pistols in the second. The board held that they were dutiable as side arms under the tariff act of 1897, which contained no provision for pistols. It was, there, a choice between side arms and a less applicable paragraph.

When the 1909 tariff bill was written, possibly on account of the classification of pistols as side arms under the act of 1897 (see Tariff Hearings, Committee on Ways and Means, 1908–1909, Schedule C, Part 2, "Metals and manufactures of," p. 2240), the following provision for pistols by name was inserted:

PAR. 157. * * * pistols, automatic, magazine, or revolving, or parts thereof. * * *

In the act of 1913 substantially the same language was used:

PAR. 133. * * * pistols, whether automatic, magazine, or revolving, or parts thereof and fittings therefor. * * *

This was followed in the Tariff Act of 1922 by the provision quoted, *supra.*

We think the clear legislative intent was to make a separate paragraph for the purpose by including all automatic, magazine, or revolving pistols, whether used as side arms or otherwise.

In connection with the consideration of the applicability of the doctrine of classification by use to paragraph 363, it is not without interest to note that the paragraph says "side arms, *irrespective of quality or use.*"

As to the drum magazine, no sample is before us, but illustrative Exhibit A is a catalogue showing a picture of the "32-shot magazine drum," which is a round cylinder box, which attaches to and becomes a part of the regular 9-shot magazine, and feeds the cartridges to the automatic portion of the gun so as to permit a greater number of shots than would be possible without the use of the magazine drum. The proof shows that the gun can be shot and is used without any magazine whatever.

It seems to us that the magazine drum is as much a part of the pistol as is the ordinary magazine which comes inserted in the same. If the pistol is to function as an automatic repeating firearm, some mechanism must be afforded which will supply more than one cartridge. The magazine drum serves that purpose and greatly increases the number of shots over the regular magazine which is not claimed to be anything other than a part of the pistol. The contention of the importer that the drum magazines are merely accessories and that the pistol is complete without the use of the same may be answered by saying that if they are the kind of pistols represented by catalogue exhibits, "original German 'Luger' (parabellum) automatic pistols" and "Mauser self-loading automatic pistols," they would have to contain some sort of magazine or holder for the shells needed in the action of repeatedly shooting and reloading.

The classification of the collector was correct, and the action of the court below in overruling the protests of appellant was proper, and ought to be, and is *affirmed.*

BARBER, J., concurs in the conclusion.