C. J. TOWER & SONS *v.* UNITED STATES (No. 4772)[1]

---

[1] C. A. D. 550.

196

United States Court of Customs and Patent Appeals, February 3, 1954

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for appellant.
*Warren E. Burger,* Assistant Attorney General (*Richard E. FitzGibbon* and *Richard H. Welsh,* special attorneys, of counsel), for the United States.

[Oral argument December 9, 1953, by Mr. Blauvelt and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division, overruling the protest of appellant pursuant to its decision C. D. 1498.

The imported merchandise, the classification of which constitutes the issue here, consisted of an alloy in ingot form of aluminum and silicon together with some unavoidable impurities. It was classified for duty as aluminum silicon under paragraph 302 (j), Tariff Act of 1930, and assessed with duty at the rate of 5 cents per pound.

Appellant challenged that classification and contended that the goods are properly classifiable under paragraph 374 of the act, as modified by General Agreement on Tariffs and Trade, T. D. 51802, as an alloy in crude form in which aluminum is the component material of chief value and dutiable at 2 cents per pound.

Paragraph 302 (j), Tariff Act of 1930:

Silicon aluminum, aluminum silicon, alsimin, ferrosilicon aluminum, and ferro-aluminum silicon, 5 cents per pound.

On July 18, 1932 the 5 cents per pound rate on

* * * alsimin, ferrosilicon aluminum, and ferro-aluminum silicon, all the foregoing containing 20 but not more than 52 per centum of aluminum, and having silicon and iron as the other principal component elements * * *

was reduced to 2½ cents per pound by Presidential Proclamation under the authority of section 336, Tariff Act of 1930, reported in T. D. 45762.

The Trade Agreement with Switzerland, T. D. 48093, February 15, 1936, further reduced the rate:

| Tariff Act of 1930, Paragraph | Description of Articles | Rate of Duty |
|---|---|---|
| 302 (j) | Alsimin, ferrosilicon aluminum, and ferroaluminum silicon: | |
| | Containing 20 but not more than 52 per centum of aluminum, and having silicon and iron as the other principal component elements. | 1¼¢ per lb. |
| | Not specially provided for_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 2½¢ per lb. |

Paragraph 374, as amended by the General Agreement on Tariffs and Trade, January 1, 1948, T. D. 51802:

| Tariff Act of 1930, Paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 374 | Aluminum, aluminum scrap, and alloys (except those provided for in paragraph 302, Tariff Act of 1930) in which aluminum is the component material of chief value: | |
| | In crude form (except scrap)_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 2¢ per lb. |
| | In coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares. | 3¢ per lb. |
| | Scrap_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 1½¢ per lb. |

The case was submitted on the record made in C. D. 1381. That record consisted of the testimony of three witnesses who testified for the importer who is likewise the appellant herein. In the instant case, in addition to the record in C. D. 1381, two witnesses appeared on behalf of appellant together with a witness who had testified in the former case. Several exhibits were introduced by the appellant. The Government called no witnesses.

The issue before us is whether the classification made by the collector is proper or as claimed in the protest of appellant.

It appears that the imported merchandise is manufactured by placing refined bauxite, which is known as aluminum oxide, in an electrolytic cell in order to reduce it to aluminum metal. In the process the oxygen passes off in vapor form and the metal is the aluminum of commerce.

It appears that the electrolytic cell is a large potlike structure through which an electric current is passed. Inside of the structure contacting one of the electrodes is the electrolic material in which the bauxite dissolves and is attacked by the current. The metal drops to the bottom of the cell underneath the bath of the electrolyte and oxygen. It is said that the electrolytic cell is comparable to an electric battery in a motor vehicle where a reverse action gives out current. After the molten aluminum has been produced, a calculated weight of metallic silicon is added to the cell. It dissolves in the molten mass and disperses through it homogeneously. No other material is added to the molten aluminum but it appears that copper, magnesium, and titanium, as well as iron, are contained as unavoidable and unwanted impurities, it being commercially impossible to produce aluminum without those impurities being present.

In the former case, the importation consisted of ingots which were classified and assessed for duty, as was the instant merchandise. The protest in that case was the same as the protest here, with the exception of an alternative claim that the merchandise was ferroalumium silicon or ferrosilicon aluminum not specially provided for and dutiable at the rate of 2½ cents per pound, in accordance with the provisions of paragraph 302 (j) as modified by the trade agreement between the United States and Switzerland, 69 Treas., Dec. 74, T. D. 48093, effective February 15, 1936.

In the earlier case it appeared that iron was added to the aluminum and silicon mixture. The court, stating it was not disputed that the merchandise there was an alloy containing more than 52 per cent of aluminum and the other principal component elements were silicon and iron and that such alloy clearly responded to the modified provisions of paragraph 302 (j) as ferrosilicon aluminum at the rate of 2½ cents per pound, overruled all other claims of the protest.

In the instant case, it clearly appears that no iron was added to the aluminum silicon mixture and in that respect the imported merchandise differs from that of the former case.

It is contended by counsel for appellant in their brief that the articles named in paragraph 302 (j) *supra* are *eo nomine* provisions for commodities, which were known and entered into the commerce of the United States for several years prior to the passage of the act of 1930 and thereafter under the designations which appear in the statute.

It is argued that the only alloys of aluminum and silicon and aluminum, silicon, and iron which were known in the United States under the description set out in paragraph 302 (j) are metallurgical alloys used exclusively in the manufacture of industrial alloys. In support of that argument, counsel contended that the inclusion of "alsimin" in paragraph 302 (j) *supra* is a trade-name for a ferro-aluminum silicon compound used exclusively in the manufacture of

steel. Therefore, counsel contends that it is made clear Congress intended to provide for the commodities mentioned in said paragraph by their commercial and popular nomenclature.

Counsel further contended that the record in the instant case supports the position that industrial casting alloys, namely, those ready to be manufactured into finished articles, are not included by either the common or commercial meaning of any of the provisions of paragraph 302 (j).

It is clearly established that the imported commodity herein contains about 88 percent of aluminum, 12 percent of silicon, and small percentages of copper, iron, manganese, and titanium. It is also clear that those minor percentages are invariably present in commercial aluminum. They are unavoidable and unwanted impurities and are controllable within maximum limits but it is commercially impossible to produce aluminum without those impurities being present. The imported merchandise was ready for use to be cast into various articles as imported.

Counsel for appellant argue that the provision for "aluminum silicon" is restricted to its manner of use and that an alloy, such as here involved and used entirely as a metal for casting purposes, would not be recognized as "silicon aluminum" for the reason that such term is limited by its common meaning to metallurgical, intermediate, and enricher alloys.

It is well understood by those familiar with customs law that tariff acts are drawn in the language of commerce, which is presumptively that in common use, and not in the terms of science. *Hartman Trunk Co.* v. *The United States*, 27 C. C. P. A. (Customs) 254, C. A. D. 95. See also *Meyer and Lange et al.* v. *The United States*, 6 Ct. Cust. Appls. 181, T. D. 35436, and *Bakelite Corp. et al.* v. *The United States*, 16 Ct. Cust. Appls. 378, T. D. 43117, and cases cited therein.

In the present case the record is barren of any evidence which even squints at establishing the commercial meaning of the term "aluminum silicon," which differs from its common meaning.

There can be no doubt but that the goods of the involved importation are in chief value of aluminum under paragraph 374 *supra* but it is also clear that there are aluminum silicon alloys provided for under paragraph 302 (j) *supra*. It is also to be observed that in paragraph 374 *supra* the alloys provided for in paragraph 302 (j) *supra* of the act are excepted and, therefore, such goods are properly dutiable as classified by the collector unless the provision is restricted by the factor of use.

Counsel for appellant invoked the legislative history of paragraph 302 (j) for the purpose of showing that Congress intended to limit the scope of provision for "aluminum silicon" to aluminum silicon alloys

that are used as enricher or additive alloys and not those used as casting alloys, as is the present importation.

Of course, it is well known that the master rule in the construction of statutes is to interpret them so as to carry out the legislative intent. *The United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. It is equally as well known that legislative history may not be resorted to when the language of tariff statutes is plain and unambiguous. When the language used in a statute is so ambiguous that it cannot be properly determined under which paragraph Congress meant merchandise to be classified, then resort to legislative history is proper. *Stoeger* v. *The United States*, 15 Ct. Cust. Appls. 291, T. D. 42472.

It is clear to us from a reading of the statute that Congress intended that the involved merchandise should be classified as "aluminum silicon." The provision for that material is clear and unambiguous and not restricted by use or any other qualification.

However, we have examined the legislative history with respect to the provisions of paragraph 302 (j) and find nothing therein indicative of the fact that the provisions thereof should be limited as contended by counsel for appellant. For the reasons hereinbefore stated, the judgment of the United States Customs Court is *affirmed*.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.