BEFORE THE SECOND DIVISION, APRIL 6, 1959

**No. 62955.**—Border Brokerage Company *v.* United States, protests 279701–K, etc. (Seattle).

RAO, Judge: Plaintiff, a customhouse broker, imported for the account of Convoy Co. several used truck trailers, which were assessed with duty at the rate of 22½ per centum ad valorem, pursuant to the provisions of paragraph

397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as articles of base metal, not specially provided for.

By protests duly filed against the liquidations of the respective entries, which were consolidated for purposes of trial, or by timely amendment thereto, plaintiff claims, alternatively, that said trailers are dutiable at the rate of 12½ per centum ad valorem as parts of automobile trucks, within the provisions of paragraph 369(c) of said act, as modified by said General Agreement on Tariffs and Trade, or at the rate of 13¾ per centum ad valorem as machines, not specially provided for, within the provisions of paragraph 372 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739. It is contended, however, that paragraph 369 (c), as modified, is a more specific provision for the instant merchandise than said paragraph 372.

The language of the provisions in issue reads as follows:

Paragraph 397, as modified by T.D. 51802, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

*     *     *     *     *     *     *

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

*     *     *     *     *     *     *

    Other (except slide fasteners and parts thereof)\_\_\_      22½% ad val.

Paragraph 369, as modified by T.D. 51082, *supra*:

(a) Automobile trucks valued at $1,000 or more each, automobile truck and motor bus chassis valued at $750 or more each, automobile truck bodies valued at $250 or more each, motor busses designed for the carriage of more than ten persons, and bodies for such busses, all the foregoing, whether finished or unfinished_____    12½% ad val.

*     *     *     *     *     *     *

(c) Parts (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b) of paragraph 369, Tariff Act of 1930, finished or unfinished, not specially provided for:

*     *     *     *     *     *     *

    Other _____    12½% ad val.

Paragraph 372, as modified by T.D. 52739, *supra*:

Machines, finished or unfinished, not specially provided for:

*     *     *     *     *     *     *

    Other * * * _____    13¾% ad val.

It appears from the record that the Convoy Co. is in the business of transporting automobiles and, for that purpose, has operated trailers of the type here involved since 1946. Each of these so-called semi-trailers—photographs of one model being in evidence as plaintiff's exhibits 1A, 1B, and 1C—is capable of carrying four automobiles. In use, it is affixed to a gasoline-powered tractor, by means of a "fifth wheel" or "kingpin." Once attached, the trailer and tractor are generally kept together, to maintain identity of licensing, and for the reason that the runways or jump skids, running from the truck to the trailer, must be a proper length to reach from the front upper deck of the trailer to the car-

carrying rack above the cab of the truck. However, they can be separated and used with other cabs designed to pull such trailers; and it appears that, prior to importation, the instant trailers had been operated with other cabs in Canada.

The record further establishes that, pursuant to safety regulations of the Interstate Commerce Commission, the trailers are equipped with airbrakes, so that if the kingpin assembly should fail, and the trailer break loose, the airbrakes will lock and bring the trailer to a standstill. Airlines for the airbrakes, and electric lines for the various signal lights, are, respectively, hose and wire connections which run from the tractor to the trailer. They are so integrated that they operate as and when the driver of the cab applies the brake pedal or foot pedal.

The loading of cars onto the trailer is described in the record as follows:

In Exhibit 1C; it will be noticed that there is what we call a "rack" above the cab and hood of the truck. When you are ready to load this combination, aluminum loading skids or runways are laid down at the rear of the trailer, and the rear half of what we call the "upper deck" is elevated in a crocodile manner, the rear deck being hinged about the middle of the trailer. Two cars are then loaded on the lower deck of the trailer; the rear upper deck is lowered; the loading racks are then affixed to the end of the rear upper deck, and then short aluminum runways called "jump skids" are affixed between the truck and the front of the semi-trailer, and then an automobile is driven up the aluminum loading skids along the length of the semi-trailer, over the jump skids and onto the position above the cab. The jump skids are then removed; two more automobiles are loaded on the upper deck of the trailer. The skids are removed and the load is ready to go.

Counsel for plaintiff, in a well-reasoned brief, asserts these general propositions:

(1) That the truck cab with which the subject semi-trailer is used is an automobile truck within the meaning of paragraph 369, *supra*.

(2) That neither the truck cab nor the semi-trailer can serve its intended purpose of transporting automobiles or other heavy articles, except in combination with each other.

(3) That the fact that the truck cab and semi-trailer are not permanently attached to each other is immaterial to a determination of whether the trailer and the cab are components of a truck.

(4) That the interchangeability of trailers and cabs, to the extent indicated by the instant record, does not deprive the trailer of its character as part of an automobile truck.

(5) That since airbrakes, which are essential operating features of trailers, are mechanical contrivances "for utilizing, applying, or modifying energy or force or for the transmission of motion," the trailers are machines, within the purview of paragraph 372, *supra*, citing *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537.

Logic and authority combine to substantiate the position thus taken. It seems clear that neither a truck cab, nor a trailer, is *per se* the article provided for in paragraph 369(a) but that together they constitute an automobile truck within the following definitions cited by counsel:

Webster's New International Dictionary (1940) :

    *automobile*-adj: containing means of propulsion within itself; self-propelling;

Webster's New International Dictionary (1948) :

    truck, n. * * * 3. Any of numerous vehicles for transporting heavy articles; * * * 5. A large automobile vehicle for freight transportation.

The Oxford Dictionary (1926) :

truck * * * 3. a wheeled vehicle for carrying heavy weights; variously applied.

*American-La France Fire Engine Co., Inc.* v. *Riordan* (C.C.A. 2nd), 6 Fed. (2nd) 964:

* * * an automobile truck is a vehicle for the conveyance for commercial purposes over ordinary roads, and the average type of that kind of vehicle is especially designed both in its propelling and in its body construction for that function.

The essential function of a truck—the capacity to convey—must be coupled with the essential function of an automobile—self-propulsion—for a vehicle to respond to the term "automobile truck." And since an automobile truck is characterized by both elements, both must be considered as constitutent and component parts thereof. Lacking either, the vehicle is necessarily something other than an automobile truck.

In the case of a vehicle for transporting automobiles, it would seem obvious that some combination of cab and carrier must coexist, and that the carrier is as much a part of the automotive conveyance as is the cab.

When the instant trailers were imported, they were intended for use in conjunction with the motor cabs, and actually were so used. Moreover, it does not appear that semi-trailers of the type here involved subserve any other purpose or fulfill any other use. As stated in the case of *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602, in connection with the question of the dutiable status of superchargers designed for use on automobile engines:

* * * where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use.

As the record before us establishes, the joining of a trailer to a cab creates a single integrated unit, with a common braking system and a common electrical system, operated simultaneously by the driver of the cab. Accordingly, the fact that the parts may be separated, and interchanged, would have no bearing upon the issue, especially since it is clear that unless the trailer is attached to a cab, it cannot be used in transporting automobiles, nor, indeed, for any other purpose. In this connection, the cases of *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472, and *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673, cited by plaintiff, are deemed controlling.

The *Stoeger* case, *supra*, held classifiable as parts of pistols, 32-shot magazine drums, which, in use, were attached to the regular 9-shot magazines of automatic repeating pistols, notwithstanding proof that the guns could be shot and used without any magazine. Basically, the decision rested upon the theory that the extra magazine amplified the automatic repeating features of the firearm, by supplying additional cartridges. To the extent that the pistols would function as firearms without any magazine, and usually came equipped with a 9-shot magazine, it is obvious that the 32-shot magazines were not always attached or in use. Neither did it appear that any one magazine was dedicated to use with a designated pistol. Nevertheless, they were held to be parts of pistols.

Similarly, in the *American Steel & Copper Plate Co.*, case, *supra*, it was held that glass photolithographic camera screens were parts of cameras, although used only for making reproductions of photographs for printing, and, hence, not indispensable in ordinary photography.

In determining whether one article is a part of another, it is as important to consider the function of the member in connection with the entire unit with which it is to be joined, as it is to consider the purpose for which the whole unit is adapted. To quote further from the *Pompeo* case, *supra*:

* * * In the *Zeiss* case, *supra* [*United States* v. *Carl Zeiss, Inc.*, 24 C.C.P.A. (Customs) 145, T.D. 48624], the court said, "In the case at bar, where a camera for which the finders represented by Exhibits A and B are designed is equipped with a lens and its corresponding finder, *then* the finder is necessary to the completion of the camera and is 'an integral, constituent, or component part, without which the article to which it is * * * joined, could not *function as such article.*'" [First emphasis added.] The court did not consider whether the involved finders were parts of cameras considered *in vacuo*, but whether they were parts of cameras when they were applied to their intended use on the cameras. Similarly, in the *Stoeger* case, *supra*, the court did not consider whether pistols would operate without the drum magazine, for it was clear that pistols would fire with the regular magazine with which it was normally equipped. Rather, the court considered the function played by the drum magazine as it was placed in use upon the pistol, and determined that at that time it was a part of the pistol. [Italics quoted.]

In the instant case there seems to be no doubt but that the involved superchargers are "parts" of automobiles after they are installed upon the automobiles. Since the imported superchargers at time of importation are dedicated solely for use upon automobiles, as previously pointed out, and since when applied to that use they clearly meet the definition of "parts" established by the Willoughby case [*United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851], we are of the opinion that they were correctly classified as parts for automobiles.

The only function of the subject trailers is the transportation of automobiles. It is, however, useless for that purpose, unless powered by a gasoline engine of some kind. The engine must be so housed as to be capable of being joined to the trailer, and to carry a portion of the load, as for example, in a motor cab of some sort. When the two units are combined, an automobile truck results. Consequently, both the cab and the trailer, which together form the unit, must be considered to be parts of automobile trucks.

Under such circumstances, any consideration of whether or not the subject trailers are machines becomes superfluous. Every provision for parts demands to be construed in accordance with use, and, therefore, it is inherently of a more restricted scope and specific nature than any provision for a named article wherein use is neither implied nor suggested. The provision for machines, not specially provided for, alternatively invoked by plaintiff, falls within the latter class, and must be subordinated to a classification predicated upon use.

By reason of the foregoing, we hold that the subject trailers are provided for in paragraph 369(c), as modified, *supra*, as parts of automobile trucks, which are dutiable at the rate of 12½ per centum ad valorem. The claim of plaintiff to that effect is sustained. All other claims are, however, overruled.

Judgment will be entered accordingly.