(C.D. 2244)

BUSHNELL INTERNATIONAL, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 22, 1961.)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This protest relates to certain merchandise, described on the invoice as "100 p'ces of 7X Telephoto Lens." It was classified under the provision for prism-binoculars in paragraph 228(a) of the Tariff Act of 1930, as modified, carrying a duty assessment at the rate of 30 per centum ad valorem. Although several claims are made in the protest, plaintiff relies on the one, made by valid amendment to the protest, alleging that the proper classification for the merchandise is as parts of cameras, not specially provided for, under paragraph 1551 of the Tariff Act of 1930, with duty assessment at the rate of 20 per centum ad valorem.

Plaintiff's sole witness was its technical director, whose experience includes the testing, adjusting, calibrating, repairing, and overhauling of all kinds of optical instruments, as well as participation in the design of the present merchandise, particularly with respect to its technical aspects and improvements.

The witness' statement that the article in question is "a type of binocular since binocular by its very designation says that it utilizes two eye pieces" (R. 24) is supported by the sample (plaintiff's collective exhibit 1). Samples are potent witnesses. (*Marshall Field & Co.* v. *United States,* 20 C.C.P.A. (Customs) 225, T.D. 46037.) The imported article looks like the standard prism-binocular—7¼ inches in height and 8¼ inches across the base when standing—made for ordinary or usual binocular use.

The article in question was characterized by the witness as a telephoto unit, designed for photographic work, "especially to be used in conjunction with the camera to obtain long focus or telephoto pictures." (R. 8.) He referred to certain features that adapt it for such use. A ground glass eyepiece is "installed in the left ocular so that we may have a definite plane of focus in the viewing side

of the telephoto instrument that will exactly correspond with the rigid film plane of the camera on the right side." A prism system, consisting of "specially high index of refraction glass," increases light transmission to the film plane, and the use of zinc sulphide coating eliminates some of the ultra-violet rays that have a tendency to scatter or degrade the photographic image. A special adaptor forms "the physical coupling between the telephoto unit and the camera." (R. 11.) The article in question is not in chief value of the photographic lens. (R. 7.) Describing the use of the present merchandise with a camera, the witness testified as follows:

* * * The 7–X telephoto instrument is basically composed of two sides; the right half of the instrument is coupled to the camera lens by virtue of a coupling bracket. The left half of the instrument is used to accomplish the focus. The focus is accomplished by actuation of the center wheel. With the instrument mounted in conjunction with the camera, the right "eye" piece is immediately adjacent to the camera lens. The left half of the instrument, the left eye piece is placed next to the photographer's eye. The correct focus is then obtained on the ground glass installed in the left ocular of the telephoto instrument. As the correct focus is obtained on this ground glass, the focus is simultaneously obtained on the film plane of the camera. The picture may then be shot and will then be a sharp and clear photograph.

In further testimony concerning the use of the present merchandise with a camera, the witness stated that it has 7-power magnification, that "the taking side or clear side of the telephoto unit, when used in conjunction with the camera lens, gives clear telephoto pictures" (R. 14), and that it is essential to the operation of a camera "if you intend to take telephoto pictures." (R. 14.)

It should be noted that the witness' testimony on direct examination, as hereinabove outlined, relates entirely to the use of the present merchandise in conjunction with a camera. No reference is made to the use of these binoculars for viewing purposes. Pertinent to such use, is plaintiff's advertising circular or pamphlet (plaintiff's exhibit 2), which identifies the merchandise in question as "A BINO-FOTO UNIT" and includes the following description:

The BINO-FOTO UNIT includes the BINO-FOTO BINOCULAR, the Bino-Dapter (bracket for mounting the camera and binocular in perfect alignment) and the combination IRIS-SUNSHADE.

The heart of the unit is the custom-designed BINO-FOTO Binocular. This superb instrument is specifically engineered with photo-precision optics.

It features a left-side bayonet mount to permit quick interchange between a clear eyepiece, used with twin lens reflex cameras and *for normal viewing*, and the FOLLOW FOCUS EYEPIECE, used for focusing with 35 mm and movie cameras. [Italics supplied.]

On cross-examination, the witness identified a clear glass eyepiece of 7-power magnification (defendants' exhibit A), which, when fitted to the article in question, enables it to be used as an ordinary binocular for viewing purposes. Another advertising pamphlet (defendant's

exhibit B), published and circularized by plaintiff, contains a "BINOC-ULAR RATING CHART," listing the article under consideration with its various degrees of efficiency for the different uses of binoculars. A booklet, published by plaintiff and titled, "How To Use Your New Bino-Foto Unit" (defendant's exhibit C), refers to the binoculars in question as follows (p. 8):

Bushnell's 7xBF Bino-Foto Model is the only *binocular* that closes far enough to align with both viewing and taking lenses of a Twin Lens Reflex Camera. It also features a red guide line on the right eyepiece which automatically balances *binocular* for photography. [Italics supplied.]

In another pamphlet, copyrighted by plaintiff and titled, "How to focus your BUSHNELL binoculars" (defendant's exhibit D), which was contained in the box enclosing the imported merchandise, the article in controversy is referred to as "Bino-Foto Binoculars—Telephoto with your Camera."

Plaintiff's publications (exhibits A to D, *supra*) support the oral testimony to the effect that the present merchandise is a "type of binocular," equipped with a prism system.

From the evidence adduced by both parties, we find that the article under consideration is a binocular of 7-power magnification, capable of use, alone, for viewing purposes, and also susceptible of use in conjunction with a camera for taking so-called telephoto pictures. Thus, we consider whether this binocular is part of a camera, as claimed by plaintiff, or is classifiable under the provision for prism-binoculars, as assessed by the collector.

To support plaintiff's contention, counsel, in their brief, put much stress on *United States* v. *Carl Zeiss, Inc.*, 24 C.C.P.A. (Customs) 145, T.D. 48624, particularly as it related to certain finders for photographic cameras, known as "Contax" cameras. Such cameras were designed to be used with 11 lenses, in addition to the lens originally placed in the camera. Each lens covered a different field, and, for the camera to properly function as such, the particular finder to be used was the one adapted for the lens to be employed. A finder was useless, unless a particular photographic lens was inserted in the camera, and when such lens was inserted, the original built-in finder was useless. In other words, when different lenses were used with the camera, they became useless, unless the corresponding finders were also employed. In holding the finders to be classifiable as parts of cameras, the appellate court stated as follows:

* * * These finders are not accessories for the cameras fitted with finders suitable for the original lenses of the cameras. They cannot be employed at all unless different lenses are employed, and the finders here involved are designed for and can be used only in conjunction with such lenses. If the photographic lenses for which the finders were designed were imported separately, it seems clear that they would in fact be parts of cameras, although

more specifically provided for as photographic lenses under paragraph 228(b), and dutiable thereunder. This being true, and it being established that a camera fitted with such lenses could not be properly operated without the use of a finder designed to be used in conjunction with such lens, it seems obvious that such finders should likewise be held to be parts of cameras. * * *

The same reasoning does not apply in the case before us. Here, we are concerned with an article that is designed or equipped with certain features, enabling it to be used in conjunction with a camera, which is only one of its two substantial uses. When this binocular is fitted to, or coupled with, a camera, neither article loses its individual identity. The mere fact that the binocular in question can be used with a camera or is even designed to be used with a camera, does not necessarily make it a part thereof.

The principle, governing the tariff classification of imported merchandise as part of an article, is stated in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851, which involved certain tripods, composed of wood. In rejecting the importer's claim for classification of the tripods as parts of cameras, the Court of Customs and Patent Appeals stated as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. * * *

. The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

It is evident, we think, from the character of the articles and from the testimony in the case, that, when a tripod and a camera are used together, each "performs its separate function without loss of any of its essential characteristics." Whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity. * * *

We are of opinion, therefore, that, although it may be necessary to use *tripods* as *supports* for the involved *cameras*, tripods are not, for that reason, integral, constitutent, or component parts of such cameras. The most that can be said is that the two articles—a tripod and a camera—are designed to be used together, one as a support for the other, and that they are chiefly so used. [Italics quoted.]

The rule of construction, as set forth in the foregoing quotation, was applied in *United States* v. *E. Leitz, Inc.*, 26 C.C.P.A. (Customs) 418, C.A.D. 49, where certain photographic rangefinders were involved. In holding that the rangefinders were not properly classifiable as parts of cameras, our appellate court quoted from the *Willoughby* case, *supra*, and then stated as follows:

So in the case at bar, when the range finder here involved and the camera for which it is designed are used together, each "performs its separate function without loss of any of its essential characteristics," and "whether separate or

joined, each is complete in itself, each is a distinct and separate commercial entity."

The evidence here shows that it is optional with the purchaser to buy the camera with or without the range finder, and appellee's catalog shows that the range finder is offered for sale separately from the camera.

Consistent with the reasoning followed and the conclusion reached in the last two cited cases, we hold that the binoculars under consideration are not properly classifiable as parts of cameras. These binoculars are separate commercial entities, bought and sold as such. Their use with cameras is optional. The most that can be said for the present merchandise is that it is a desirable accessory for use with a camera. It is capable of use, alone, as a prism-binocular, for viewing purposes, and is, also, susceptible of use in conjunction with a camera for taking so-called telephoto pictures.

The important element in the rule for classification of merchandise as "part" of a product is that the article in question, at the time of importation, is dedicated to a specific use, and that when applied to that use, it becomes an integral, constituent, or component part, without which the article to which it is joined cannot function as such article. *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602; *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472; *United States* v. *Bell & Howell Co.*, 19 C.C.P.A. (Customs) 151, T.D. 45263; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; *Border Brokerage Company* v. *United States*, 42 Cust. Ct. 343, Abstract 62955. Following is a brief reference to each of those cases, all of which are cited in plaintiff's brief.

The *Antonio Pompeo* case involved certain superchargers, manufactured and specially designed for installation in Ford and Austin automobiles, and which, once installed, became a permanent installation, necessary for the proper and efficient functioning of the engine. In holding the articles to be classifiable as parts of automobiles, the Court of Customs and Patent Appeals stated as follows:

\* \* \* At the time of importation these superchargers, as the undisputed evidence clearly shows, are dedicated irrevocably for use upon automobiles. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their undisputed ultimate use.  \* \* \*

\*          \*          \*          \*          \*          \*          \*

In the instant case there seems to be no doubt but that the involved superchargers are "parts" of automobiles after they are installed upon the automobiles. Since the imported superchargers at time of importation are dedicated solely for use upon automobiles, as previously pointed out, and since when applied to that use they clearly meet the definition of "parts" established by the *Willoughby* case, we are of the opinion that they were correctly classified as parts for automobiles.

The "drum magazines for Luger pistols" involved in the *Stoeger* case, *supra*, were held to be classifiable as parts of pistols upon a finding that, in the dedicated and exclusive use of the drum magazine, it "feeds the cartridges to the automatic portion of the gun so as to permit a greater number of shots than would be possible without the use of the magazine drum." That the pistols could function with their regular magazines, was not an important consideration. The controlling condition was that the drum magazine, when employed in its sole use, became an integral, constituent, and component part of a pistol. The *Bell & Howell* case, *supra*, held certain articles, consisting of "small brass rings, designed and adapted for holding photo-color filters—colored glass—in front of photographic lenses in the taking of colored pictures," to be classifiable as parts of photographic cameras on "uncontroverted evidence," showing that the filter adapters were designed for and exclusively used as equipment for photographic lenses and, when so connected, directly contributed to, and aided, photographic lenses in the performance of their proper functions. In the *American Steel & Copper Plate Co.* case, *supra*, the appellate court held certain glass photolithographic camera screens to be parts of cameras and based its conclusion on a record showing "that reproduction cameras are photographic cameras and that the screens in question are essential parts of these cameras and without which they can not function as such." In the *Border Brokerage Company* case, the merchandise consisted of certain truck trailers that were intended for use in conjunction with motor cabs and exclusively so used, and whose sole function was for the transportation of automobiles. In holding such trailers to be classifiable as parts of automobile trucks, the court quoted with approval from the *Antonio Pompeo* case, *supra*, emphasizing the principle that "where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use."

The rule invoked in the line of cases, immediately hereinabove reviewed, cannot be applied to the binoculars before us. The binoculars involved herein are not dedicated to a specific use. On the contrary, they are equally adaptable to two substantial uses, each serving a widely different purpose. As viewing devices, these binoculars are used alone. In their use with cameras, they are adjuncts thereto only for taking a certain class or kind of picture, and do not become permanently attached, as did the superchargers that were involved in the *Pompeo* case, *supra*. After their use in conjunction with cameras, the binoculars in controversy are easily detachable for their alternate use as optical instruments of 7-power magnification, and the cameras,

without the use of the present merchandise, will still function as cameras. The articles in question are not "parts" of cameras, within the judicial interpretation of the term, as enunciated in the authorities cited herein.

The case of *L. Oppleman, Inc.* v. *United States*, 3 Cust. Ct. 227, C.D. 240, is also in point. There, the merchandise consisted of certain marine compasses. In excluding such compasses from classification as parts of motorboats, the court quoted from the *E. Leitz, Inc.*, case, *supra*, and then reasoned as follows:

If, as was held in the last-cited case, range finders were not parts of cameras, then *a fortiori* the instant compasses are certainly not parts of motorboats. There, the cameras were specially constructed and designed for the insertion therein of the range finders. Here, there is no proof that any motorboat was specially constructed and designed for the installation of a marine compass. On the contrary, it appears that, where the compass is purchased by a motorboat owner, it must be installed by an expert since there is no particular place on the boat to receive it.

*   *   *   *   *   *   *

Again, in the cited case the evidence disclosed that it was optional with the purchaser to buy a camera with or without the range finder, and that the range finder was offered for sale separately from the camera. Similarly in the present case it is optional with the purchaser to buy a motorboat with or without a compass, and the plaintiff's catalog shows that the compasses are not only sold separately but that they are sold separately in conjunction with other accessories.

A somewhat comparable situation is shown herein with respect to the merchandise under consideration. The binoculars before us are sold separately. Their use with cameras is optional, and when so used, it is for a limited purpose. They are desirable accessories to cameras when a photographer wants to take so-called telephoto pictures. These binoculars do not meet the requirements for classification as parts of cameras, as claimed.

That the articles in question are prism-binoculars, is amply supported by the record. All of the literature embodied in plaintiff's advertising pamphlets, hereinbefore reviewed, identifies the present merchandise as a binocular. As stated in the circular (plaintiff's exhibit 2, *supra*), "The heart of the unit is the custom-designed Bino-Foto Binocular." Furthermore, the witness, plaintiff's technical director, admitted that the article in question is "a type of binocular," and stated, further, that it is equipped with a prism system made of "special high index of refraction glass."

Since the present merchandise consists of prism-binoculars—and we so hold—it is, therefore, *eo nomine* provided for under paragraph 228(a), as modified, as classified by the collector.

Paragraph 1551 of the Tariff Act of 1930, as it provides for parts of cameras, is limited in scope, by virtue of the residuary clause therein which restricts classification to only such parts of cameras as are "not specially provided for." It follows that even if the prism-binoculars involved herein were "parts" of cameras—which we hold they are not—this merchandise would be excluded from classification as such because they are specifically provided for, as previously stated under the *eo nomine* designation for "prism-binoculars" in paragraph 228(a), as modified, as assessed by the collector.

On the basis of the present record and for all of the reasons here-inabove set forth, the protest is overruled, and judgment will be rendered accordingly.