(C.D. 2370)

BUSHNELL INTERNATIONAL, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided on rehearing [C.D. 2244] November 5, 1962)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Sheila N. Ziff* and *Morris Braverman,* trial attorneys), for the defendant.

OLIVER, Chief Judge: This protest relates to certain merchandise, described on the invoice as "100 p'ces of 7X Telephoto Lens." The case was the subject of our decision in *Bushnell International, Inc.* v. *United States*, 46 Cust. Ct. 124, C.D. 2244, wherein we sustained the collector's classification of the merchandise under the provision for prism-binoculars in paragraph 228(a) of the Tariff Act of 1930, as modified, carrying a dutiable rate of 30 per centum ad valorem. The conclusion overruled plaintiff's claim for classification as parts of cameras, not specially provided for, under paragraph 1551 of the Tariff Act of 1930, with a duty assessment at the rate of 20 per centum ad valorem.

The case is before us at this time pursuant to an order granting plaintiff's motion for rehearing, *Bushnell International, Inc.* v. *United States*, 46 Cust. Ct. 477, Abstract 65613.

From an examination of the sample (plaintiff's collective exhibit 1), the imported article looks like the standard prism-binocular—7¼ inches in height and 8¼ inches across the base when standing—made for ordinary or usual binocular use. For a description thereof, we quote from our previous decision, C.D. 2244, *supra*, wherein we stated as follows:

> The article in question was characterized by the witness as a telephoto unit, designed for photographic work, "especially to be used in conjunction with the camera to obtain long focus or telephoto pictures." [R. 8.] He referred to certain features that adapt it for such use. A ground glass eyepiece is "installed in the left ocular so that we may have a definite plane of focus in the viewing side of the telephoto instrument that will exactly correspond with the rigid film plane of the camera on the right side." A prism system, consisting of "specially high index of refraction glass," increases light transmission to the film plane, and the use of zinc sulphide coating eliminates some of the ultra-violet rays that have a tendency to scatter or degrade the photographic image. A special adaptor forms "the physical coupling between the telephoto unit and the camera." [R. 11.]

Explaining the use of the present merchandise with a camera, plaintiff's technical director, who was the sole witness in the original presentation of this case, testified, at the original hearing, as follows:

> * * * The 7–X telephoto instrument is basically composed of two sides; the right half of the instrument is coupled to the camera lens by virtue of a coupling bracket. The left half of the instrument is used to accomplish the focus. The focus is accomplished by actuation of the center wheel. With the instrument mounted in conjunction with the camera, the right "eye" piece is immediately adjacent to the camera lens. The left half of the instrument, the left eye piece is placed next to the photographer's eye. The correct focus is then obtained on the ground glass installed in the left ocular of the telephoto instrument. As the correct focus is obtained on this ground glass, the focus is simultaneously obtained on the film plane of the camera. The picture may then be shot and will then be a sharp and clear photograph.

In further testimony concerning use with a camera, the witness, in his testimony at the original hearing, stated that the article in question has 7-power magnification; that "the taking side or clear side of the telephoto unit, when used in conjunction with the camera lens, gives clear telephoto pictures" (R. 14), and that it is essential to the operation of a camera "if you intend to take telephoto pictures" (R. 14).

While the article in question has substantial use in conjunction with a camera, as hereinabove set forth, it is also susceptible of use for normal viewing purposes. There is in evidence a clear glass eyepiece of 7-power magnification (defendant's exhibit A), which, when fitted to the imported unit in place of the ground glass eyepiece, enables it to be used as an ordinary binocular for viewing purposes. Pertinent to such use of these binoculars is plaintiff's advertising circular (plaintiff's exhibit 2), which identifies the present merchandise as "A BINO-FOTO UNIT" and includes the following description:

The BINO-FOTO UNIT includes the BINO-FOTO BINOCULAR, the Bino-Dapter (bracket for mounting the camera and binocular in perfect alignment) and the combination IRIS-SUNSHADE.

The heart of the unit is the custom-designed BINO-FOTO Binocular. This superb instrument is specifically engineered with photo-precision optics.

It features a left-side bayonet mount to permit quick interchange between a clear eyepiece, used with twin lens reflex cameras and *for normal viewing*, and the FOLLOW FOCUS EYEPIECE, used for focusing with 35 mm and movie cameras. [Italics supplied.]

At the trial on rehearing, plaintiff introduced three witnesses, whose combined testimony is to the effect that the article in question, at the time of importation, was equipped with a ground glass eyepiece, which is essential for the use of these binoculars in conjunction with a camera for the taking of telephoto pictures.

From that additional testimony, plaintiff argues, as stated in counsel's brief, as follows:

It is respectfully submitted that the additional testimony adduced herein on rehearing has clarified the state of the facts herein so as to establish conclusively that the Bino-Foto units at bar, in their condition as imported, are in fact integral, constituent and component parts of cameras, without which the cameras cannot function as telephoto cameras, thus bringing this case directly within the principle of the *Zeiss* case, *supra*.

The case of *United States* v. *Carl Zeiss, Inc.*, 24 C.C.P.A. (Customs) 145, T.D. 48624, which is the "*Zeiss* case, *supra*," referred to in the foregoing quotation, was cited by plaintiff in its original brief and was discussed at length in our earlier decision. The additional testimony adduced by plaintiff supplies no reason for changing our views on the present issue. Accordingly, there is repeated, hereinafter,

much of what appears in our prior decision, C.D. 2244, *supra*. Referring to the *Zeiss* case, *supra*, we stated as follows:

To support plaintiff's contention, counsel, in their brief, put much stress on *United States* v. *Carl Zeiss, Inc.*, 24 C.C.P.A. (Customs) 145, T.D. 48624, particularly as it related to certain finders for photographic cameras, known as "Contax" cameras. Such cameras were designed to be used with 11 lenses, in addition to the lens originally placed in the camera. Each lens covered a different field, and, for the camera to properly function as such, the particular finder to be used was the one adapted for the lens to be employed. A finder was useless, unless a particular photographic lens was inserted in the camera, and when such lens was inserted, the original built-in finder was useless. In other words, when different lenses were used with the camera, they became useless, unless the corresponding finders were also employed. In holding the finders to be classifiable as parts of cameras, the appellate court stated as follows:

* * * These finders are not accessories for the cameras fitted with finders suitable for the original lenses of the cameras. They cannot be employed at all unless different lenses are employed, and the finders here involved are designed for and can be used only in conjunction with such lenses. If the photographic lenses for which the finders were designed were imported separately, it seems clear that they would in fact be parts of cameras, although more specifically provided for as photographic lenses under paragraph 228(b), and dutiable thereunder. This being true, and it being established that a camera fitted with such lenses could not be properly operated without the use of a finder designed to be used in conjunction with such lens, it seems obvious that such finders should likewise be held to be parts of cameras. * * *

The same reasoning does not apply in the present case. Here, we are concerned with an article that is designed or equipped with certain features, enabling it to be used in conjunction with a camera, which is only one of its two substantial uses. It is used in conjunction with a camera only for the particular purpose of taking telephoto pictures. For the article in controversy to perform this specific purpose, it must have fitted therein the ground glass eyepiece, hereinabove referred to. That it was so equipped, when imported, does not *ipso facto* make the unit part of a camera. The use of the ground glass eyepiece merely adapts the imported commodity to its use in conjunction with a camera. But the article under consideration is not dedicated to such use. Plaintiff's technical director admitted that, by replacing the ground glass eyepiece with a clear glass eyepiece of 7-power magnification (exhibit A, *supra*), the imported unit will serve the purpose of an ordinary binocular very satisfactorily.

The important element in the rule for classification of merchandise as "part" of a product is that the article in question, at the time of importation, is dedicated to a specific use, and that when applied to that use, it becomes an integral, constituent, or component part, without which the article to which it is joined cannot function as such article. *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602; *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D.

42472; *United States* v. *Bell & Howell Co.*, 19 C.C.P.A. (Customs) 151, T.D. 45263; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; *Border Brokerage Company* v. *United States*, 42 Cust. Ct. 343, Abstract 62955.

The binoculars involved herein are not dedicated to a specific use. On the contrary, they are equally adaptable to two substantial uses, each serving a widely different purpose. As viewing devices, these binoculars are used alone. In their use with cameras, they are adjuncts thereto only for taking a certain class or kind of pictures. When they are fitted to, or coupled with, a camera, neither article loses its individual identity. The binoculars in question do not become permanently attached to a camera when used in connection therewith. After their use in conjunction with a camera, the binoculars in controversy are easily detachable for their alternate use as optical instruments of 7-power magnification, and the camera, without the use of the present merchandise, will still function as a camera. The article in question is not "part" of a camera, within the judical interpretation of the term, as enunciated in the cited authorities, which were reviewed in detail in our previous decision, C.D. 2244, *supra*.

Plaintiff has cited, in its brief filed after rehearing, the case of *Trans Atlantic Company* v. *United States*, 48 C.C.P.A. (Customs) 30, C.A.D. 758, which was not mentioned in its original brief. That case related to certain metal brackets that were exclusively used for mounting hydraulic door closers on a door frame. The brackets were sold with door closers only when the closer was to be mounted on the door frame. The purchaser of the door closer had the option to mount it, either on the door frame or on the door, but once it was decided to use the closer on the door frame, the imported brackets became necessary and were required for the proper and efficient operation of the door closers. The appellate court held that "When so used the brackets are attached to and clearly are 'parts' of the door closers." No comparable situation exists herein. The article under consideration, in this case, is not an auxiliary device to a camera like the metal brackets. once installed, were to the door closers. The binoculars involved herein are separate commercial entities, bought and sold as such. A camera will function as a camera, without the imported commodity, which was not true of the door closers mounted on a door frame without the metal brackets, involved in the *Trans Atlantic* case. When the present merchandise is used in conjunction with a camera, it serves only as a desirable accessory for a photographer to take telephoto pictures. This particular, or limited, purpose is an alternate use, not a dedicated, or exclusive, use of the merchandise.

Plaintiff also cites *Unimark Photo, Inc.* v. *United States*, 47 Cust. Ct. 75, C.D. 2283, which involved certain wide-angle lenses and telephoto lenses, identified as supplementary lenses, and which were

specially made for, and exclusively used with, multipurpose motion-picture cameras. The motion-picture cameras, complete with all of their equipment or attachments, including the wide-angle lenses and the telephoto lenses, were bought and sold as entireties according to model number. The wide-angle lenses and telephoto lenses did not, of themselves, form a photographic image, but had to be used in combination with the prime lens. When so used, the wide-angle lenses and telephoto lenses became essential parts that were necessary for the complete performance of the manifold operations of the motion-picture camera. The supplementary lenses were, therefore, held to be classifiable with the camera and all of its attachments under the provision in paragraph 1551 of the Tariff Act of 1930, as modified, for motion-picture cameras, and parts thereof, not specially provided for. The factual condition, as well as the type of merchandise, now before us is materially different from what was before the court in the cited case. Here, the merchandise consists of binoculars susceptible of use with a camera for telephoto pictures, but readily detachable therefrom for normal viewing purposes. The wide-angle and telephoto lenses involved in the *Unimark Photo* case were constituent or integral parts of the multipurpose motion-picture camera, and, as we stated in the cited case, "When the supplementary lenses in question are attached to or fitted in these motion-picture cameras, their individual identity is subordinated in the creation of a new entity—a motion-picture camera—that is, an article of commerce bearing a different name from the names of the several attachments." This is not true with respect to the binoculars involved herein in connection with their use with a camera. The *Unimark Photo* case has no influence over the disposition of the present case. The binoculars in question do not meet the requirements for classification as parts of cameras, as claimed.

At this point, it is appropriate to quote from our previous decision, C.D. 2244, the concluding paragraphs reading as follows:

That the articles in question are prism-binoculars, is amply supported by the record. All of the literature embodied in plaintiff's advertising pamphlets, hereinbefore reviewed, identified the present merchandise as a binocular. As stated in the circular (plaintiff's exhibit 2, *supra*), "The heart of the unit is the custom-designed BINO-FOTO Binocular." Furthermore, the witness, plaintiff's technical director, admitted that the article in question is "a type of binocular," and stated, further, that it is equipped with a prism system made of "special high index of refraction glass."

Since the present merchandise consists of prism-binculars—and we so hold—it is, therefore, *eo nomine* provided for under paragraph 228(a), as modified, as classified by the collector.

Paragraph 1551 of the Tariff Act of 1930, as it provides for parts of cameras, is limited in scope, by virtue of the residuary clause therein which restricts classification to only such parts of cameras as are "not specially provided for."

It follows that even if the prism-binoculars involved herein were "parts" of cameras—which we hold they are not—this merchandise would be excluded from classification as such because they are specifically provided for, as previously stated, under the *eo nomine* designation for "prism-binoculars" in paragraph 228(a), as modified, as assessed by the collector.

For all of the reasons hereinabove set forth, as well as those set forth in our previous decision, C.D. 2244, *supra*, which are incorporated herein by reference, the protest is overruled, and judgment will be rendered accordingly.