(C.D. 2187)

Charles Garcia & Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided June 23, 1960)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* and *David Serko* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The plaintiff in this case imported certain spinning reels used by sport fishermen. Each reel is so made that a spool containing fishing line may be quickly and easily attached or detached from the part containing the mechanism for reeling in or releasing the amount of line desired to be used when engaging in fishing. With each reel was packaged two spools, of construction, material, and line capacity different from each other. One spool, of smaller capacity than the other, is made of plastic and is used for what is termed "light" fishing, i.e., for comparatively small fish, while the other spool, of larger capacity, is made of metal, and is used for "heavy" fishing, presumably for larger fish.

The collector of customs classified each reel mechanism and one spool as a single tariff entity and assessed duty thereon at the rate of $1.50 each under the provision in paragraph 1535 of the Tariff Act of

1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T.D. 51802, for—

Fishing reels, finished or unfinished, not specially provided for * * *.

The other spool was classified by the collector as a separate tariff entity upon which he assessed duty at the rate of 40 per centum ad valorem under the provision in said paragraph 1535, as modified by the said T.D. 51802, for—

Parts of fishing rods and reels, finished or unfinished, not specially provided for * * *.

It is the plaintiff's claim that the reel and both spools are a single tariff entity, dutiable under the provision for fishing reels by virtue of the doctrine of entireties.

The issue raised by the protest in this case, involving reels and spools identical with those before us herein, was the subject of decision by this court in *Charles Garcia & Co., Inc.* v. *United States*, 37 Cust. Ct. 117, C.D. 1808. That decision, which was adverse to the plaintiff's claim, was affirmed in *Same* v. *Same*, 45 C.C.P.A. (Customs) 1, C.A.D. 663.

The plaintiff has sought a retrial of the issue and here seeks a judgment in its favor on the ground that additional evidence, including certain stipulations of fact, presented in this case, warrant a determination that, as a matter of fact and law, the spools were entireties with the spinning reels with which they were imported.

In our opinion, reported as C.D. 1808 in the original case, we held that the imported reel and one spool responded to the meaning of the tariff term "fishing reels," and that the second spool imported therewith was an accessory, rather than an integral part, of the commercial entity known as a fishing reel. In so doing, we took note of evidence in the record indicating that spinning reels other than the particular one in issue could use or could be adapted to use interchangeable spools—

* * * and that there is nothing particularly or peculiarly characteristic of the imported reel which sets it apart from other spinning reels with respect to susceptibility of use for more than one type of fishing.

In the present case, the plaintiff has sought to show that fishing reels of the spinning type other than the particular reel at bar are designed, made, and sold for use with one size of spool, and that while other spools of the same size may be used interchangeably in connection with such reels, the different spools cannot be successfully adapted or used for a wide range of fishing activities involving the use of light and heavy gear and line.

As developed in the record, it appears that there are a number of problems involved in the effort to use one spinning reel mechanism and more than one spool for different types of fishing. First, in order to make the reel suitable for heavy fishing, a large capacity spool

must be used, i.e., one having sufficient line capacity to be used for heavy fishing where both the diameter of the line and the length of the line are greater than they are in the case of light fishing. Second, it appears that in all cases the winding of the line of the hub of the spool and between the flanges of the spool must be uniform and level. Third, the reel must incorporate a drag mechanism which can be adjusted for the weight of the fish intended to be caught in order to prevent line breakage, etc.

It appears that in order to secure the benefit of large capacity of line needed for heavy fishing, a wide width spool was adopted in the case of the spinning reels at bar, width in this case meaning the distance between the flanges. The width of the two spools applied with the reel at bar is the same, but the light-duty spool is made of lighter construction and materials than the heavy-duty spool and has a different drag mechanism incorporated in it. The light-duty spool also has a hub of greater diameter than the heavy-duty spool, inasmuch as it is not required to carry as much line as is the case of the heavy-duty spool.

Inasmuch as the spools in spinning reels have two motions when being used—one the rotary motion around the axle of the reel mechanism which winds or releases the line from the hub of the spool, and the other a traverse back and forth of the axle and spool which is intended to provide uniform and level winding of the line around the hub from flange to flange—the use of the wide width spool introduced another problem.

The reel mechanisms previously in existence which were suitable for use with narrow width spools imparted sinusoidal traverse action to the axle, i.e., the speed of the traverse of the axle holding the spool was greater in the center than it was at the ends, with the result that when a wide width spool was used the line tended to pile up at the ends of the hub. The reel mechanism of the spinning reel at bar was designed to impart a linear, instead of a sinusoidal, motion to the traverse action of the reel, resulting in uniform and level winding of the line.

A third problem found in reels other than the one at bar when attempt was made to use them for both light and heavy fishing, was the limitation of the drag mechanism which was built into the reel mechanism. A light-purpose reel would not have sufficient drag action for use in heavy fishing. In the case of the spinning reels at bar, the problem was solved by incorporating the drag mechanism into each spool and making it adjustable for the type of fishing for which the spool was intended to be used.

By reason of the design and arrangement of both the reel mechanism and the two spools at bar, therefore, it appears that the reel will successfully accept and handle the small capacity, large hub diameter

spool packaged therewith which is used for light lines, and yet instantly and without adjustment accept and handle the large capacity, narrow hub diameter spool which is used when heavy line is used for heavier types of fishing.

The effort of the plaintiff in the case at bar has been to establish that the particular spinning reel at bar is a true dual-purpose reel and that to obtain the benefit of both of its purposes each of the spools is essential to use of the reel. Hence, plaintiff argues, both spools are integral parts of the said reels.

We are of the opinion that plaintiff has been successful in its effort, as well as in establishing that, in such respect, the reels and spools at bar are unique and differ from all other fishing reels.

To the extent indicated, the record in the present case is materially different from that upon which we predicated our decision in the original case.

In the light of such record, plaintiff asks a reexamination of the applicability of several decisions of our appellate court which were discussed in the opinions of this and our appellate court in the original *Garcia* case (C.D. 1808 and C.A.D. 663, *supra*), and therein held to be inapplicable on the basis of the facts therein established.

The decisions to which plaintiff refers are *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T.D. 35338, and *George Scherr Co., Inc.* v. *United States*, 40 C.C.P.A. (Customs) 6, C.A.D. 489. Both of those cases involved articles which, as imported, consisted of what may be termed a main component and certain detachable or adjustable parts. The said parts, when each separately attached to the main component, would permit the combined article to perform different functions, or various forms of the same function.

In the *Norma* case, the article imported was a metal working machine. While there is no precise description of the machine in the published opinions of the courts, it seems clear that it consisted of what was termed "the machine proper" and a set of tools which, when each separately attached to the machine proper, would enable the combination to perform various types of metal grinding and metal turning.

The machine proper and the tools were assessed with duty under the provision in paragraph 199 of the Tariff Act of 1909 for manufactures of metal, and were claimed to be properly dutiable under the provision in the same act for machine tools.

The predecessor of this court held the machine proper to be dutiable under the provision for machine tools, but relegated the tools to classification under the manufactures of metal provision. Upon appeal, the predecessor of our appellate court clearly and succinctly, we think, laid down the rule applicable to imported articles designed, made, and sold to be used, with accompanying, separate, detachable

parts, to perform different functions or various forms of the same function. In so doing, the court said:

It will be noticed that paragraph 197 contains no provision for parts of machine tools; hence thereunder the pertinent question here is what are the constituent parts of the machine tools in this case.

We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool *which are indispensable to enable it to perform the manifold operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts* or purely hand tools or appliances, and not including belts designed to connect the tool with the motive power, *are properly parts of a machine tool. To illustrate, one importing a machine tool designed to drill metal with drills of varying sizes would be entitled to import therewith as a constituent part thereof one set of detachable, adjustable parts necessary and required to enable it to drill all the different sized holes for which it was designed, because otherwise it could perform only a part of its functions, while its availability, desirability, and practical use and value might depend upon its ability to drill holes of different sizes.* [Italics added.]

Although the foregoing was said with particular applicability to the machine tool provision in paragraph 197 of the Tariff Act of 1909, we think, as we have indicated, that it is also applicable, in the absence of contrary legislative intent, to any situation involving articles designed, made, and sold for multiple purposes, or, as the court put it, "manifold operations."

Moreover, although the court pointed out that the provision in paragraph 197 of the 1909 act contained no provision for *parts* of machine tools, while the provision in paragraph 1535 of the present act does contain a provision for parts of fishing reels, we think it is clear that the court laid down the rule applicable to *constituent* or integral parts imported with the rest of the article, i. e., the parts which are necessary to make up the complete article, as distinguished from "reserve, duplicate, extra, or spare parts."

It seems obvious that the constituent or integral parts of a whole article, imported together, would be properly classifiable under a tariff designation for the article (assuming, of course, as appears here, that no question of the degree of assembly required or demonstrable legislative intent otherwise was involved), regardless of whether the paragraph also made provision for parts of such articles. A provision for parts, it would seem, would refer to reserve, duplicate, extra, or spare parts, and it would also seem, from the decided cases, that a tariff provision for "parts of" an article is limited to such parts as are constituent or integral parts, and not adjuncts or accessories. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851.

The *Scherr* case, *supra*, illustrates this last observation. There, certain articles known as speed indicators, used for measuring the

speed of rotating shafts, were imported. They consisted of an instrument having a dial mechanism connected to a steel tip. In use, the steel tip of the instrument was placed against a depressed center of the revolving shaft whose speed it was desired to measure. For shafts not having a depressed center, certain rubber-faced tips were provided which could be slipped over the end of the steel tip of the mechanism to provide the necessary contact with the rotating shaft.

The instruments and the tips were classified by the collector as entireties under the provision in paragraph 368(a) (1) and (2) of the 1930 act for mechanisms, devices, or instruments intended or suitable for measuring speed. Plaintiff's protest claimed the instruments and the tips to be separately dutiable, the instruments under the provision as classified, but at a lower compound rate of duty applicable to the value of the instruments without the tips, and the tips either under the provision in paragraph 397 of said act for metal articles, or under the provision in paragraph 368(c) (6) for *parts of* mechanisms, etc., intended or suitable for measuring speed.

It is to be noted that, besides reaffirming the principle of law of the *Norma* case, our appellate court, at least by implication, rejected the argument that the presence in paragraph 368(c) (6) of a provision for parts of the mechanisms provided for in paragraph 368(a) required a result different from that which would obtain if there had been no specific provision for such parts.

Examining the complete record before us, in the light of the *Norma* and *Scherr* decisions, we are of the opinion that the facts in the case at bar are so analogous in all material respects to those in the two cited cases as to require the application of the principle of law set forth in those cases. The article before us is a fishing reel, designed, made, and sold as a multi-purpose fishing reel, that is to say, one having a wider range of use than can be accomplished by any single-purpose fishing reel, even when the spools of the latter may be altered or adapted. That wide range of use is achieved by the use of a specially designed mechanism and specially designed, detachable spools.

Such an article, in its tariff aspect, is analogous to the machine tool involved in the *Norma* case which, with its detachable parts, could perform a wide range of grinding operations, and to the machine tool designed to drill metal, referred to in the opinion of our appellate court in the *Norma* case to illustrate the point, which could drill "all the different sized holes for which it was designed."

In the present case, the reel mechanism, with the two spools furnished therewith, can be used for all the different types of fishing for which it was designed, which cannot be achieved by other, single-purpose reels, even when altered or adapted. The reel mechanism in the case at bar combined with only one spool—to borrow phraseology and reasoning from the opinion in the *Norma* case—"could perform

only a part of its functions, while its availability, desirability, and practical use and value" depend upon its ability to be used for a wider range of fishing than can be provided by any one spool.

Similarly, with respect to the speed indicators involved in the *Scherr* case, if one wished to measure the speeds of rotating shafts, he would be limited to measuring the speed of only one type of shaft if he did not have the detachable tips. Yet the instrument was designed, made, and sold as a device for measuring speeds of more than one type of shaft. So, too, without both of the spools supplied with the reel mechanism, the article would have a limited function and one not in accordance with the purposes for which it was designed, made, and sold.

Defendant argues that "It cannot be denied that the spinning reel with one spool is a complete fishing reel." Of course, the statement can be denied. The fact is that *some* spinning reels are *complete* fishing reels with only one spool, but this is not to say that *all* spinning reels are complete fishing reels with only one spool. A single-barreled shotgun is a complete shotgun with only one barrel, but it cannot be asserted that a double-barreled shotgun is anything more than a complete shotgun merely because it has more than one barrel.

It seems to us, in harmony with the reasoning of the appellate court in the *Norma* case, that if a spinning reel was designed, made, and sold for more than one type of fishing, it would not be a complete spinning reel without all of the parts that are essential to use it for any of the types of fishing for which it was designed, made, and sold. Such a reel would not be a complete fishing reel when it has only such parts as permit limited, rather than full, use of it.

Defendant states in the brief filed in its behalf that "It also cannot be denied that two spools cannot be used at the same time with only one reel." No one seeks to deny such a statement, but the real question is whether it is a *sine qua non* of a tariff entirely that all of its parts must be used or be capable of being used at the same time. Certainly, the decisions in the *Norma* and *Scherr* cases, relating to articles which are used with alternate parts depending upon the function of the article desired to be performed, and the logic upon which those decisions are based, are directly contrary to any such proposition.

Also in point is the decision of the predecessor of our appellate court in the case of *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872, involving the status as parts of paper-making machines of certain endless belts. It appeared that such belts were used only when the machine was used for making tissue grades of paper, but were not used when the machine was engaged in the manufacture of heavier grades of papers. The fact that the machine could be used to make paper without the endless belts was held to be no bar to the belts being considered integral parts of the machine.

We have found no decision of this or our appellate court directly holding that all of the parts of a tariff entirety must be used together at the same time. Perhaps the thought was engendered by certain expressions in various decisions which, when considered apart from the issue disposed of in such decisions, might be so interpreted. One such expression is found in the decision in the case of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232. In the *Altman* case, the court said:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

It is to be noted that the court referred to "parts, which are designed to form, when joined or attached together, a complete article of commerce * * *." It did *not* say "when joined or attached together *and used at the same time*," and we do not think that any such meaning was intended to be conveyed by the language used. Certainly, such a meaning was not required under the issue presented in the case.

We conclude, therefore, that it is not a requirement of tariff entireties that all of their parts be used or be capable of being used at the same time. Consequently, the fact that both spools cannot be used at the same time with one reel mechanism is no bar to classification of the reel mechanism and both spools as a single tariff entirety.

Defendant also argues that "The doctrine of entireties does not apply to parts of named articles when the parts themselves are particularly provided for," citing, in this connection, *Henry Pels & Co.* v. *United States*, 27 C.C.P.A. (Customs) 1, C.A.D. 51.

We have examined the decision in the *Pels* case and fail to find anything therein contained which could be construed as supporting the argument made by defendant as above. The *Pels* case did not relate to the doctrine of entireties at all, but to a question of relative specificity. It was there held that the provision in paragraph 372, Tariff Act of 1930, for "[parts of] punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes," was a more specific designation for knives or blades designed for use in shearing metal shapes than the provision in paragraph 356 of the said act for "shear blades * * * and all other cutting knives and blades used in power or hand machines." An observation made in the course of the opinion that the decision in the *Norma* case was inapposite in the determination of the issue in the *Pels* case and a statement that—

* * * The paragraph there at issue contained no provision for parts of machine tools. Here we have, in paragraph 372, *supra*, an express provision which definitely defines the articles by the use for which intended.

certainly cannot be stretched into a holding that "The doctrine of entireties does not apply to parts of named articles when the parts themselves are particularly provided for."

In our original decision in the *Garcia* case, C.D. 1808, we referred to the *Pels* case and observed that in that case—

* * * our appellate court indicated that the *Norma Company* case was no longer an authority on the subject of alternate parts for such machine tools, in view of the inclusion in paragraph 372 of the present act of a provision for parts of machine tools. This evidence of legislative intent, it was indicated, made the *Norma Company* decision inapposite in such situations.

As is, of course, shown by the fact that, in the later decision in the *Scherr* case, our appellate court reaffirmed the principle of law of the *Norma* case, our observation, as aforesaid, was not necessarily the correct interpretation of the effect of the decision in the *Pels* case upon the rule of the *Norma* case. We note that the decision in the *Pels* case was not taken into consideration in the determination by our appellate court in the original *Garcia* case, C.A.D. 663.

On the facts before us in the original *Garcia* case, we held that the extra spool was an accessory rather than an integral part of the commercial entity known as a fishing reel. We had in mind the distinction between such parts laid down in the case of *Peter J. Schweitzer (Inc.)* v. *United States, supra*, wherein the court said:

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary, or optional, it is an accessory. If, however, it is used as an essential part, and if the machine is incapable of performing its ordinary and proper functions without it, it will be considered, at least for tariff purposes, as an integral part of the machine.

On the basis of the facts now established by the entire record, we are satisfied that the "ordinary and proper functions" of the reel at bar are for use in light or heavy fishing; that it was designed, made, and sold for both such functions; and that the reel is incapable of performing those functions without both spools. We, therefore, hold that the two spools are constituent or integral parts of the reels at bar and that the reel and two spools are entitled to classification as an entirety.

Before closing our discussion of this case, we think it pertinent to note that by reason of the collector's classification and the defendant's contention there is a virtual admission that the second spool packed with each reel is an integral part of the reel, rather than an accessory. This is so because it is well settled that a provision for "parts of" an article designated in a tariff act is limited only to such parts as are

integral, constituent, or component parts, without which the article to which it is to be joined could not function as such article. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851.

Consequently, if the second spool were merely an accessory to the reels and not a part thereof, it could not be classified under the provision for parts of fishing reels in paragraph 1535, *supra.* It follows that if the second spool is at all classifiable under paragraph 1535 as a part of a fishing reel, it must be as a reserve, duplicate, extra, or spare part which, when used, is an integral or constituent part of the reel. The record is ample to demonstrate that the spools are not used interchangeably in the sense that one may be used in place of the other to perform the same function, and we are, therefore, of the opinion that they are not reserve, duplicate, extra, or spare parts.

On the basis of the entire record before us, and for the reasons hereinbefore expressed, we sustain the protest claim accordingly.