(C.D. 2283)

UNIMARK PHOTO, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 20, 1961)

*Norman Katz* for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: The shipments covered by these two protests consisted of certain 8-millimeter and 16-millimeter motion-picture cameras, which, at the time of importation, had certain attachments permanently installed therein or affixed thereto. A standard or prime lens with standard viewfinder is built into the body of the camera. Firmly attached thereto is a turret, to which are fitted wide-angle and telephoto viewfinder adaptors, with a wide-angle lens and a telephoto lens.

Except for the wide-angle lens and the telephoto lens, the imported merchandise was assessed with duty at the rate of 15 per centum ad valorem under the provision in paragraph 1551 of the Tariff Act of 1930, as modified, for motion-picture cameras and parts thereof, not specially provided for. The collector regarded the angle lens and the telephoto lens as separate entities and classified them as photographic lenses under paragraph 228(b) of the Tariff Act of 1930, as modified, carrying a dutiable rate of 25 per centum ad valorem.

Plaintiff accepts the collector's classification of all of the imported items, except the wide-angle lens and the telephoto lens, hereinafter referred to as the supplemental lenses, which, it is claimed, are integral components of the motion-picture cameras and, therefore, properly classifiable therewith, either as essential elements of the entirety, or as parts thereof, under the same provision invoked by the collector, with the attendant rate of duty of 15 per centum ad valorem.

It has been stipulated between counsel for the respective parties that "the ordinary lens and the two so-called supplementary lenses are not the chief value of the camera." (R. 7.)

Four witnesses testified; two on behalf of plaintiff and two for the defendant. Their combined testimony presents no factual conflict. The following summary of the record will support the testimony of the witnesses for both parties.

Involved herein are three models of motion-picture cameras, i.e., the "Eumig C3R," an 8-millimeter camera (plaintiff's exhibit 2), the "C16R," a 16-millimeter camera, and the "EER," an 8-millimeter camera that operates with the use of electric batteries. All of them

are equipped with a turret and wide-angle and telephoto attachments. Each operates on the same principle, so that our reference herein to one applies equally to the three cameras. The cameras, complete with all of their imported equipment or attachments, are bought and sold as entireties according to model number. They are never sold with the normal lens only, and the supplemental lenses are sold separately only when desired as replacements. The admission by plaintiff's general manager that one of the items on the invoices in question covers an importation of the cameras, without attachments, refers to an unusual transaction at a time when the foreign exporter "did not have the supplementary attachments available," so they were "made here in the United States." (R. 61.) However, the imported motion-picture cameras, with the domestic-made attachments, were sold as complete entities, in accordance with the usual trade practice relating to this merchandise.

All of the attachments are essential for the proper and efficient operation of these motion-picture cameras. The turret is fitted to the camera with a center shaft and positioned at a given point with the use of positioning lugs to provide a minimum amount of play so it will be on a central axis, optically. Its purpose is to position the supplemental lenses in line with, and at a given distance from, the prime lens. The turret is not removable. The supplemental lenses in controversy are specifically made to function with the motion-picture cameras under discussion. They are not photographic lenses, because they will not, of themselves, form a photographic image at a given focal length. Their only practical use is in conjunction with a normal photographic lens. In such usage, these supplemental lenses change or convert the focal length of the prime lens to enable the user to take either wide-angle or telephoto views. The wide-angle lens reduces the normal lens to half its usual focal length. The telephoto lens doubles the length of the normal lens. Replacing the prime or normal lens with a wide-angle lens or a telephoto lens would not produce a photographic image. It is only in combination with the normal lens that either of the supplemental lenses will produce acceptable views. The combination of a wide-angle lens or a telephoto lens with the normal lens has the effect of forming a lens system with a certain optical formula, so that the merging of both lenses performs a single function to produce the desired photographic image.

The motion-picture cameras under discussion are multipurpose cameras. When the normal lens that is built into the camera is not covered by the turret, the camera operates for normal filming with the prime lens and viewfinder. When the turret is shifted or turned to cover the normal lens, the camera is made ready for taking either wide-angle or telephoto views, depending on the field of the photo-

graph that is put before the eye of the user. In other words, by rotating the turret so that either the wide-angle lens or the telephoto lens, with its respective viewfinder, covers the normal lens and viewfinder, the field of vision is converted according to the particular attachment in use. Removal from the camera of the turret with the angle and telephoto adaptors and lenses would render such attachments useless and incapable of serving any purpose.

There is some testimony, adduced by defendant, relating to motion-picture cameras of domestic manufacture which are materially different from the cameras involved in the present discussion.

It appears from the evidence, as hereinabove outlined, that the cameras in question, by their design and construction, are multi-purpose motion-picture cameras; that they function as an ordinary motion-picture camera with the use of the prime or normal lens taking the standard photographic image; that they produce, with the use of the supplemental lenses, a wide-angle image or a telephoto image, whichever adaptor is employed by the user; and that all of the attachments are essential for the operation of these cameras in the performance of their manifold functions. Furthermore, the supplemental lenses in question cannot be used with any other motion-picture cameras. Their removal from these cameras renders the supplemental lenses useless. They have no independent function; they must be used, as heretofore described, in conjunction with the normal or prime lens.

The very recent decision of the United States Court of Customs and Patent Appeals in *United States* v. *Charles Garcia & Co., Inc.*, 48 C.C.P.A. (Customs) 140, C.A.D. 780 (customs suit 5056), which affirmed this court's decision in *Charles Garcia & Co., Inc.* v. *United States*, 44 Cust. Ct. 282, C.D. 2187, is pertinent. In that case, the merchandise consisted of certain spools for so-called "Mitchell 300" spinning reels used by sport fishermen. The imported unit was made up of a reel mechanism on which was mounted one interchangeable spool and a second, but different, interchangeable spool enclosed in a plastic box. Record evidence established that the "Mitchell 300" was deliberately designed as a dual purpose reel; that both of the spools imported with the spinning reel were necessary to enable the reel to perform the manifold operations in both light and heavy fishing; and that the reel was incapable of performing those functions without both spools. In holding the reel, with the two spools, to be classifiable as an entirety, the appellate court quoted with approval from the decision of this court, C.D. 2187, *supra*, wherein we concluded as follows:

On the basis of the facts now established by the entire record, we are satisfied that the "ordinary and proper functions" of the reel at bar are for use in light or heavy fishing; that it was designed, made, and sold for both such functions; and that the reel is incapable of performing those functions without both

spools. We, therefore, hold that the two spools are constituent or integral parts of the reels at bar and that the reel and two spools are entitled to classification as an entirety.

The substance of the foregoing quotation, concerning the reel and spools involved in the cited case, has equal application, with the same force and effect, to the motion-picture cameras and their attachments, including the supplementary lenses, involved herein. In this case, the commercial entity is the motion-picture camera, complete with all of the said attachments. Unless the cameras are equipped with all of the attachments, they are deprived of their full commercial capabilities and become limited to the single use of an ordinary camera, which they are not. The supplementary lenses in controversy are made to a specific strength for exclusive use in conjunction with the prime lens that is built into the body of the multipurpose cameras under discussion. When the supplementary lenses in question are attached to or fitted in these motion-picture cameras, their individual identity is subordinated in the creation of a new entity—a motion-picture camera—that is, an article of commerce bearing a different name from the names of the several attachments.

Consistent with the reasoning followed and the conclusion reached in the *Garcia* case, *supra*, we find that the motion-picture cameras with their attachments, as heretofore identified, are commercial entities and hold that the supplementary lenses, being constituent or integral parts thereof, are properly classifiable under the provision in paragraph 1551 of the Tariff Act of 1930, as modified, for motion-picture cameras and parts thereof, not specially provided for.

Attempting to support the collector's classification of the supplementary lenses in question, counsel for defendant cites certain cases wherein different kinds of merchandise were excluded from classification as parts of cameras. *Andre Debrie, Inc., of America* v. *United States*, 69 Treas. Dec. 264, T.D. 48140; *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 41 Cust. Ct. 11, C.D. 2014; and *United States* v. *E. Leitz, Inc.*, 26 C.C.P.A. (Customs) 418, C.A.D. 49. All of those cases are distinguishable from the present case as the following review of each discloses.

The *Andre Debrie, Inc.*, case, so far as it relates to the present case, involved certain focusing mounts and lenses which were used in conjunction with a moving-picture camera, described as "1 'SUPER-PARVO' Camera No. 6283 complete with its accessories," and which was materially different from the multipurpose motion-picture cameras involved herein. In fact, the question of entireties, which is the prime issue in this case, was not a consideration in the cited case. Hence, the legal aspects of the said case are not comparable with those presented herein.

The *Hensel, Bruckmann & Lorbacher* case, *supra*, excluded certain measuring chains from classification as parts of so-called Minox

cameras upon a finding that "the measuring chains were used as a convenience in taking closeup pictures but that such use was optional and not essential to the use of said cameras in the performance of their normal functions." This is not so with reference to the supplementary lenses involved in this case. On the contrary, they are integral components of motion-picture cameras and are necessary for the multiple operations of the cameras.

In the *Leitz* case, *supra*, the merchandise consisted of certain photographic rangefinders. In holding that they were not classifiable as parts of cameras, the appellate court stated that—

* * * when the range finder here involved and the camera for which it is designed are used together, each "performs its separate function without loss of any of its essential characteristics," and "whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity."

The evidence here shows that it is optional with the purchaser to buy the camera with or without the range finder, and appellee's catalog shows that the range finder is offered for sale separately from the camera.

Such a condition does not apply to the supplementary lenses in question. These wide-angle and telephoto lenses are specially made for use in conjunction with the prime lens of the models of motion-picture cameras discussed herein, and, when so used, the supplemental lenses are parts that are essential for the complete performance of the manifold operations of these cameras.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. Reference herein has been made only to those cases considered necessary to support the conclusion reached.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the articles, described on the invoices as "tele lenses" or "wide angle lenses," to be dutiable at the rate of 15 per centum ad valorem under the provision in paragraph 1551, as modified, for motion-picture cameras, and parts thereof, not specially provided for, as claimed by plaintiff.

The protests are sustained and judgment will be rendered accordingly.