(C.D. 2833)

PAILLARD, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 29, 1966)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Charles P. Deem*, trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

WATSON, Judge: The merchandise in the case at bar consists of certain anamorphic lenses and metal adapters which were assessed with duty as entireties at the rate of 35 per centum ad valorem under paragraph 228(b) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade,

T.D. 52739 and T.D. 52820, as "projection lenses." Plaintiff claims that the anamorphic lenses are properly dutiable at the rate of 21 per centum ad valorem under paragraph 230(d) of the said act, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, as manufactures wholly or in chief value of glass, not specially provided for. Plaintiff further claims that the metal adapters are properly dutiable at 19 per centum ad valorem under paragraph 397 of the tariff act, as modified by T.D. 54108, *supra*, as metal articles, not specially provided for, in chief value of iron or steel.

The pertinent provisions of the Tariff Act of 1930 are as follows:

Paragraph 228(b), as modified, *supra:*

Mirrors for optical purposes, projection lenses, sextants, and octants, finished or unfinished, not specially provided for_____ 35% ad val.

Paragraph 230(d), as modified, *supra:*

All glass, manufactures of glass, or of which glass is the component of chief value, not specially provided for (except broken glass or glass waste fit only for reman- ufacture and pressed wares)_____ 21% ad val.

Paragraph 397, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:
&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Not wholly or in chief value of tin or tin plate:

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *)__ 19% ad val.

Plaintiff introduced in evidence two exhibits. Plaintiff's exhibit 1 is an illustration of the imported merchandise. Plaintiff's lens is marked with the letter "A." The adapter to hold it in front of a camera is marked with the letter "B." Plaintiff's exhibit 2 is an illustration of an anamorphic lens and adapter for use with a projector.

The case was submitted on an agreed stipulation of facts, the pertinent part of which is as follows:

5. That the imported anamorphic lenses are mounted lenses which have been ground in such a manner as to permit the photographing and projecting of "wire screen films." They are used in conjunction with standard or telephoto photographic lenses and standard projec-

tion lenses. The imported adapters are attached to the front of motion picture cameras which are equipped with turret openings. The anamorphic lens, when used with cameras, is secured to the adapter, held in front of the standard lens, and after alignment is ready for operation. The lens thus formed, consisting of the imported anamorphic lens and the standard camera lens, compresses the light into the film without distortion, loss of sharpness, or loss of brightness in such a manner as to produce a wide screen view having a two to one, width to height, picture ratio, the projection of which does not require a special curved screen. With different adapters, the imported anamorphic lenses are used with projectors, the lens formed by the anamorphic lens functioning in conjunction with the standard projection lens enabling undistorted projection of the wide screen film view.

6. That the imported anamorphic lenses do not replace standard photographic lenses when used with cameras, and do not replace standard projection lenses when used with projectors. The imported anamorphic lenses will not produce undistorted images, either on film or on a projection screen when used by themselves, and are not so used.

7. That the imported anamorphic lenses and other similar anamorphic lenses were, on or about May 5, 1959 and March 16, 1960, used more often with projectors than with cameras and were used for no other purpose.

8. That when attached to a camera, an anamorphic lens is essential to the camera's function in producing wide screen film. When attached to a projector, the anamorphic lens is essential to the projector's function of producing a wide screen projection.

9. That the adapters at issue are in chief value of steel and are not plated with platinum, gold or silver, or colored with gold lacquer.

10. That the component material of chief value of the anamorphic lenses at issue is either glass or steel.

The defendant in the case at bar conceded error in the collector's treatment of the involved anamorphic lenses and adapters as entireties and agrees that the two articles are, as contended by the plaintiff, separately classifiable and dutiable. With respect to protest 62/11014, entry 987800, it appears that the appraiser did not return separate values for the lenses and adapters, but appraised the two articles there involved together as an entirety at Swiss franks 218, plus packing. Under such circumstances, the appraisement in question is void. Accordingly, protest 62/11014 should be dismissed as premature, and the matter should be remanded to a single judge for determination of the values of the two articles involved, pursuant to 28 U.S.C., section 2636(d). See, *John P. Herber & Co., Inc.* v. *United States*, 30 Cust. Ct. 193, C.D. 1519; and *United States* v. *William Heyer*, 31 CCPA 111, C.A.D. 259.

With respect to protest 62/11794, entry 970998, it appears that the appraiser did return separate values for the anamorphic lenses and the adapters, the articles having been entered at separate values and ap-

praised as entered. Accordingly, the appraisement is not void; the protest is not premature; and no remand is required.

Plaintiff, in support of its contention that the involved anamorphic lenses are not properly classifiable under paragraph 228(b) of the tariff act as "projection lenses," directs our attention to the holding of this court in the case of *Unimark Photo, Inc.* v. *United States*, 47 Cust. Ct. 75, C.D. 2283. The merchandise there involved, consisted of certain 8-millimeter and 16-millimeter motion picture cameras which, at the time of importation, had certain attachments permanently installed therein or attached thereto. A standard or prime lens with standard viewfinder was built into the body of the camera. Firmly attached thereto was a turret, to which were fitted wide-angle and telephoto viewfinder adaptors, with a wide-angle lens and a telephoto lens. Except for the wide-angle lens and the telephoto lens, the merchandise there imported was assessed with duty at the rate of 15 per centum ad valorem under the provision in paragraph 1551 of the Tariff Act of 1930, as modified, for motion-picture cameras and parts thereof, not specially provided for. In the *Unimark* case, *supra*, the collector regarded the angle lens and the telephoto lens as separate entities and classified them under paragraph 228(b) of the Tariff Act of 1930, as modified, at the rate of 25 per centum ad valorem as "photographic lenses." The plaintiff therein accepted the classification of all of the imported items except the wide-angle lens and the telephoto lens, which it claimed were integral components of the motion-picture cameras, and, therefore, properly classifiable therewith at the rate of 15 per centum ad valorem under the same provision in paragraph 1551 of the tariff act invoked by the collector, either as essential elements of the entirety or as "parts" thereof.

In the *Unimark* case, *supra*, the record disclosed that the cameras, complete with all of their imported equipment or attachments, were bought and sold as entireties; that they are never sold with the normal lens only; and that the supplemental lenses are sold separately only when desired as replacements. It further appeared that the wide-angle lens and the telephoto lens there in question were specifically made to function with the motion-picture cameras and that all of the attachments were essential for the proper and efficient operation of the imported motion-picture cameras.

In holding that the lenses there involved were not photographic lenses, the court in the *Unimark* case, *supra*, at page 77, stated:

\* \* \* They are not photographic lenses, because they will not, of themselves, form a photographic image at a given focal length. Their only practical use is in conjunction with a normal photographic lens. In such usage, these supplemental lenses change or convert the focal length of the prime lens to enable the user to take either wide-angle or telephoto views. The wide-angle lens reduces the normal lens to half

its usual focal length. The telephoto lens doubles the length of the normal lens. Replacing the prime or normal lens with a wide-angle lens or a telephoto lens would not produce a photographic image. It is only in combination with the normal lens that either of the supplemental lenses will produce acceptable views. The combination of a wide-angle lens or a telephoto lens with the normal lens has the effect of forming a lens system with a certain optical formula, so that the merging of both lenses performs a single function to produce the desired photographic image.

and, at page 78, the court further stated:

It appears from the evidence, as hereinabove outlined, that the cameras in question, by their design and construction, are multi-purpose motion-picture cameras; that they function as an ordinary motion-picture camera with the use of the prime or normal lens taking the standard photographic image; that they produce, with the use of the supplemental lenses, a wide-angle image or a telephoto image, whichever adaptor is employed by the user; and that all of the attachments are essential for the operation of these cameras in the performance of their manifold functions. Furthermore, the supplemental lenses in question cannot be used with any other motion-picture cameras. Their removal from these cameras renders the supplemental lenses useless. They have no independent function; they must be used, as heretofore described, in conjunction with the normal or prime lens.

The court in the *Unimark* case, *supra*, held that the involved motion-picture cameras with their attachments, heretofore identified, were commercial entities and that, accordingly, the supplementary lenses, being constituent or integral parts thereof, were properly classifiable under the provision in paragraph 1551 of the Tariff Act of 1930, as modified, for motion-picture cameras and parts thereof, not specially provided for. In so holding, the court in the *Unimark* case cited the decision of *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780. The merchandise there involved consisted of certain spools for so-called "Mitchell 300" spinning reels used by sport fishermen. It appeared that the imported unit was made up of a reel mechanism on which was mounted one interchangeable spool and a second, but different, interchangeable spool enclosed in a plastic box. The record in the *Garcia* case, *supra*, disclosed that the "Mitchell 300" was deliberately designed as a dual purpose reel; that both of the spools imported with the spinning reel were necessary to enable the reel to perform the manifold operations in both light and heavy fishing; and that the reel was incapable of performing those functions without both spools. On the basis of the record therein, the appellate court in the *Garcia* case, *supra*, held the reel and the two spools properly classifiable as an entirety. In following the reasoning of the court in the *Garcia* case, *supra*, the court in the *Unimark* case, *supra*, page 79, stated:

* * * When the supplementary lenses in question are attached to or fitted in these motion-picture cameras, their individual identity is subordinated in the creation of a new entity—a motion-picture camera—

that is, an article of commerce bearing a different name from the names of the several attachments.

Accordingly, as heretofore indicated, the court in the *Unimark* case held the involved lenses to be "parts" of motion-picture cameras and that the imported motion-picture cameras with the supplementary lenses were properly classifiable as motion-picture cameras and parts thereof.

The anamorphic lenses here under consideration will not, of themselves, form an image. It appears that their only practical use is in conjunction with a normal projection lens. Replacing the prime or normal projection lens with the imported anamorphic lens, does not produce a projected image. These anamorphic lenses are, in our opinion, supplementary lens attachments as distinguished from supplementary lenses or lenses which are capable by themselves of producing undistorted images, either on film or on a projection screen. Accordingly, the situation in the case at bar, parallels that which prevailed in the *Unimark* case, *supra*. For similar reasons as there stated, we are of opinion and hold that the anamorphic lenses in question are not properly classifiable under the provisions of paragraph 228(b) of the Tariff Act of 1930, as modified, for "photographic or projection lenses."

In *Andre Debrie Inc. of America* v. *United States*, 69 Treas. Dec. 264, T.D. 48140, the merchandise under consideration consisted of a so-called "Super-Parvo Camera" complete with its accessories. Included in the importation were six lenses, other than the one essential for the camera, and five focusing mounts, which were classified under paragraph 228(b) of the Tariff Act of 1930 at the rate of 45 per centum ad valorem under the provision therein for "photographic or projection lenses." Plaintiff, in its protest, claimed the lenses in question were properly classifiable at 20 per centum ad valorem under paragraph 1551 of the tariff act as parts of cameras. Plaintiff's witness, in testifying as to the lenses there involved, stated "If you want to get a different photographic result then you interchange the lenses." Explaining the uses of these lenses, the witness further stated:

There are various focal length lenses. If I had a camera here and I would want to photograph you gentlemen here, and I have a certain distance at my disposal I have to use a certain focal length lens. If I want to get the whole table in the picture I would have to have another lens. In making a motion picture you have to have a complete set of lenses; otherwise your camera would be useless.

In holding the lenses there involved properly dutiable as classified as "photographic or projection lenses," the court in the *Andre Debrie Inc.*, case, *supra*, at pages 268–269 stated:

As to the six lenses: It evidently was within the mind of Congress when it enacted the Tariff Act of 1930 that but one lens was connected

with a photographic camera; otherwise, why does the proviso to paragraph 1551, state *"Provided,* That if the *photographic lens* is the component of chief value of the camera", etc. ? It will be observed that the term is not "photographic lenses" but *"the* photographic lens".

It is true that a photographic lens is a part of a camera, and Congress evidently intended that one lens accompanying a camera should be dutiable as such part; but there is an *eo nomine* provision in paragraph 228(b) for "photographic or projection lenses", and it seems to us Congress intended this provision to cover such lenses either when imported apart from the camera, or extra lenses accompanying a camera. It is elementary that a specific or *eo nomine* designation overrides words of general description. Therefore, "photographic or projection lenses", being more specific than "parts" of photographic cameras, overrides the latter provision, excepting in the one case where a camera is imported with the necessary lens accompanying it, and not then if the lens is the component of chief value of the camera. In which case, as stated in the proviso to paragraph 1551, it "shall be dutiable at the rate applicable to such photographic lens when imported separately." [Emphasis quoted.]

In the *Debrie* case, *supra,* it appeared that the lenses there involved were extra lenses of various focal lengths accompanying the camera and could be used by themselves to take a picture or view. Accordingly, they were held properly classifiable under the *eo nomine* provision in paragraph 228(b) of the tariff act for "photographic or projection lenses." The lenses in the case at bar, however, are not of the same type as those involved in the *Debrie* case, *supra,* and the provisions of paragraph 228(b) of the tariff act are not applicable to the lenses here under consideration.

On the question whether the provision for projection lenses is an *eo nomine* provision implying use, the defendant in this case has directed our attention to the following cases: *J. E. Bernard & Co., Inc.* v. *United States,* 44 Cust. Ct. 315, Abstract 63712, involving certain imported brass sieves classified under paragraph 360 of the Tariff Act of 1930, as modified, and claimed dutiable under paragraph 397 of the act, as modified, as articles, partly or wholly manufactured, composed wholly or in chief value of brass; *Hygeia Antiseptic Toothpick Co.* v. *United States,* 1 Ct. Cust. Appls. 497, T.D. 31529, involving certain "Hygeia" paper used for wrapping straws and toothpicks, classified under paragraph 459 of the Tariff Act of 1897 as cigarette paper and claimed properly dutiable under paragraph 402 of that act as paper not specially provided for; and the cases of *Hammel, Riglander & Co.* v. *United States,* 6 Treas. Dec. 217, T.D. 24280, involving the classification of certain lenses which were chiefly used in bicycle lanterns and which were claimed dutiable under paragraph 111 of that act as "projecting lenses." We have reviewed these cases with relationship to the question as to whether or not the lenses here involved are "photo-

graphic or projection lenses," but in view of our determination that they are not such lenses, for the reasons heretofore stated, we deem it unnecessary to further discuss the three cases above cited.

Plaintiff in the case at bar, as heretofore noted, claims the involved anamorphic lenses properly classifiable at the rate of 21 per centum ad valorem under the provisions of paragraph 230(d) of the Tariff Act of 1930, as modified, as manufactures wholly or in chief value of glass. It is not disputed that these lenses are made only of glass and have a steel mounting, but the parties to this controversy were unable to determine or agree as to which of these two materials is the component material of chief value. The most that could be agreed upon was that the component material of chief value was either glass or steel. In support of its contention that no proof need be offered in the present case concerning the component material of chief value of the anamorphic lenses, plaintiff directs our attention to the holding of the court in the case of *Block House (Inc.)* v. *United States*, 20 CCPA 408, T.D. 46233.

In the *Block House* case, *supra*, the merchandise indicated by the official samples, consisted of paper-covered books or booklets of six to a dozen leaves, printed on each side with a series of colored designs or plans of buildings and structures. On the covers were printed in various languages instructions as to the use of various toy building blocks, words in foreign languages and in two cases in English, indicating that the books were copywrited and were printed or made in Germany. The collector described the merchandise as "toy books without reading matter other than letters, numerals or descriptive words, suitable only for the amusement of children" and classified the merchandise under the toy paragraph, namely, paragraph 1513 of the Tariff Act of 1930. The appellant in the *Block House* case, *supra*, claimed the merchandise properly dutiable under paragraph 1410 of the act for books "if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem." Appellant's claim was at the higher rate of 25 per centum ad valorem under said paragraph. The court therein held that there was no burden upon the appellant to establish that the books were not of *bona fide* foreign authorship in order to entitle it to classification under the 25 per centum provision of said paragraph 1410, the paragraph in question providing for a lower rate of duty upon books of *bona fide* foreign authorship than upon other books coming within the paragraph. In so holding, the court, page 412, stated:

* * * Where an importer may be entitled to a lower rate than that claimed, the lower rate not being claimed, failure to establish that it is *not* dutiable at the lower rate, the physical characteristics of the goods provided for under both rates being the same, should not bar him from

receiving a classification and assessment for duty at the higher rate claimed. [Emphasis quoted.]

Plaintiff in this case in citing the *Block House* case, *supra*, as authority for its contention that it need not be affirmatively established that the lenses with their mountings are in chief value of glass, points out (brief, page 7) that the rate of duty under paragraph 230(d) of the tariff act, as modified, for manufactures of which glass is the component material of chief value, is 21 per centum ad valorem and that the rate of duty under paragraph 397 of the act, as modified, for manufactured articles in chief value of base metal (steel) is 19 per centum ad valorem. In essence, it is plaintiff's contention, based on what it deems to be the ruling in the *Block* case, *supra*, that as long as it claims for the lenses in question with the steel mountings the higher rate of duty of 21 per centum applicable under paragraph 230(d) of the act for manufactures of which glass is the component of chief value rather than claiming the lower rate of duty of 19 per centum ad valorem applicable to manufactured articles in chief value of base metal, then the question of proof as to whether the lenses with their mountings are in chief value of glass becomes immaterial. We do not, however, so construe the law and, in our opinion, the holding of the court in the *Block House* case, *supra*, is inapplicable to the situation which prevails in the case at bar, the circumstances in the cited case differing materially from those in the case at bar, and the decision in the *Block House* case in no way relieves the plaintiff herein of the burden of proof in establishing the component material of chief value of these anamorphic lenses with their steel mountings. In the present case, "the physical characteristics of the goods provided for under both rates" are not the same.

The court may not speculate as to the component material of chief value of an article when that question is, as appears in this case, a matter of credible, material, and competent evidence, and cannot supply a deficiency in proof which it is the burden of a plaintiff to establish by such competent evidence. *United States* v. *Sheldon & Co.*, 13 Ct. Cust. Appls. 53 T.D. 40880. See, in this connection, *Strakosh* v. *United States*, *Richard* v. *United States*, 1 Ct. Cust. Appls. 360, T.D. 31453. For the reasons stated aforesaid, we are of opinion that plaintiff in this case has failed to establish the correctness of its claim that the involved anamorphic lenses are properly classifiable under the provisions of paragraph 230(d) of the tariff act as manufactures in chief value of glass.

Defendant in its brief advances the claim that the imported anamorphic lenses are optical instruments and, as such, should be classifiable under the provisions of paragraph 228(b) of the tariff act. A

necessary prerequisite to classifying an article as an "optical instrument" is that it aids vision. *United States* v. *Bliss & Co. et al.*, 6 Ct. Cust. Appls. 433, T.D. 35980; *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 20 Cust. Ct. 327, Abstract 52364. The anamorphic lenses here in question do not of themselves, nor are they designed to, directly or indirectly aid vision. As heretofore indicated, their only practical use is in conjunction with standard or telephoto photographic lenses and standard projection lenses as to permit the photographing and projecting of "wide screen films." In our opinion, the imported lenses are not such "optical instruments" as are contemplated by provisions of paragraph 228(b) of the tariff act here under consideration.

The Government has conceded that the involved anamorphic lenses and adapters are not entireties, and that the adapters are properly classifiable under the provisions of paragraph 397 of the Tariff Act of 1930, as modified, as metal articles, not specially provided for, in chief value of iron or steel.

On the basis of the record here presented, protest 62/11014 is hereby dismissed as premature and the matter remanded to a single judge for the determination of the values of the anamorphic lenses and the adapters there in question, pursuant to 28 U.S.C., section 2636(d). Protest 62/11794, with respect to the claim therein that the involved mounted anamorphic lenses are properly classifiable at the rate of 21 per centum ad valorem under paragraph 230(d) of the Tariff Act of 1930, as modified, as manufactures wholly or in chief value of glass, is overruled without affirming the action of the collector. The claim in protest 62/11794 that the metal adapters therein involved are properly classifiable at the rate of 19 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified, as metal articles, not specially provided for, in chief value of iron or steel, is sustained.

Judgment will issue accordingly.