PAILLARD, INC. *v.* UNITED STATES (No. 5280)*

*C.A.D. 930.

United States Court of Customs and Patent Appeals, February 8, 1968

*Barnes, Richardson & Colburn* (*Joseph Schwartz, Earl R. Lidstrom,* of counsel) for appellant.

*Carl Eardley,* Acting Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, and *Brian S. Goldstein* for the United States.

[Oral argument October 2, 1967 by Mr. Schwartz ; Mr. Vance and Mr. Goldstein]

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, KIRKPATRICK.**

KIRKPATRICK, Judge, delivered the opinion of the court :

This is an appeal by Paillard, Inc., from the judgment of the United States Customs Court, First Division (57 Cust. Ct. 439, C.D. 2833) overruling its protest, without affirming the action of the collector, in regard to the classification of anamorphic lenses used in conjunction with motion picture cameras and projectors.

The entire record before the court consists of a stipulation of fact and two exhibits illustrating the use of the lenses with a camera and projector respectively. The pertinent portions of the stipulation entered into by the parties are as follows :

5. That the imported anamorphic lenses are mounted lenses which have been ground in such a manner as to permit the photographing and projecting of "wide screen films." They are used in conjunction with standard or telephoto photographic lenses and standard projection lenses. The imported adapters are attached to the front of motion picture cameras which are equipped with turret openings. The anamorphic lens, when used with cameras, is secured to the adapter, held in front of the standard lens, and after alignment is ready for operation. The lens thus formed, consisting of the imported anamorphic lens and the standard camera lens, compresses the light into the film without distortion, loss of sharpness, or loss of brightness in such a manner as to produce a wide screen view having a two to one, width to height, picture ratio, the projection of which does not require a special curved screen. With different adapters, the imported anamorphic lenses are used with projectors, the lens formed by the anamorphic lens functioning in conjunction with the standard projection lens enabling undistorted projection of the wide screen film view.

6. That the imported anamorphic lenses do not replace standard photographic lenses when used with cameras, and do not replace standard projection lenses

---

** Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

when used with projectors. The imported anamorphic lenses will not produce undistorted images, either on film or on a projection screen when used by themselves, and are not so used.

7. That the imported anamorphic lenses and other similar anamorphic lenses were, on or about May 5, 1959 and March 16, 1960, used more often with projectors than with cameras and were used for no other purpose.

8. That when attached to a camera, an anamorphic lens is essential to the camera's function in producing wide screen film. When attached to a projector, the anamorphic lens is essential to the projector's function of producing a wide screen projection.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

10. That the component material of chief value of the anamorphic lenses at issue is either glass or steel.

The pertinent provisions of the Tariff Act of 1930 are as follows: Paragraph 228(b), Tariff Act of 1930:

Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for_____ 45% ad val.

Paragraph 228(b), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739:

Mirrors for optical purposes, projection lenses, sextants, and octants, finished or unfinished, not specially provided for_____ 35% ad val.

Paragraph 230(d), as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108:

All glass, and manufactures of glass, or of which glass is the component of chief value, not specially provided for (except * * *) _____ 21% ad val.

Paragraph 397, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead) but not plated with platinum, gold, or silver, or colored with gold lacquer:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Not wholly or in chief value of tin or tin plate:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other, composed wholly or in chief value of iron, steel * * * (except * * *) _____ 19% ad val.

The collector assessed the lenses at 35 per cent ad valorem under paragraph 228(b) as modified, as "projection lenses." Appellant con-

tended that the anamorphic lenses were properly dutiable either at the rate of 21 per cent ad valorem under paragraph 230(d), as modified, as manufactures of which glass is the component of chief value, or at the rate of 19 per cent ad valorem under paragraph 397, as modified, as articles in chief value of iron or steel. The Government in addition to supporting the collector's classification, contended in the alternative that, if it was incorrect, the proper classification was under paragraph 228(b) as "optical instruments * * * not specially provided for."

The Customs Court found the collector's classification under 228(b), as modified, incorrect, as well as the Government's asserted alternative classification under paragraph 228(b). However, the court also held that the appellant had failed to sustain its burden of proof in claiming paragraph 230(d), the appellant having waived the lower rate under paragraph 397. The court therefore overruled the appellant's protest without affirming the action of the collector.

There are three possible issues presented.

1. Was the collector's classification of the lenses as "projection lenses" under paragraph 228(b), as modified, (35% duty) incorrect?

2. Assuming the collector's classification to be incorrect, was the Government's alternative classification as "optical instruments" (45% duty) properly rejected?

3. Assuming both the collector's classification and the Government's alternative classification to be incorrect, was the rejection of the appellant's classification as merchandise in chief value glass under paragraph 230(d), as modified, (21% duty) proper, paragraph 397 having been waived?

As to the first, the Customs Court, in holding that the anamorphic lenses in question were not projection lenses within paragraph 228(b), as modified, grounded its conclusion on the fact that the lenses when used alone cannot produce an undistorted image. To achieve that purpose, they must always be used in conjunction with regular camera or projection lenses. The court's view is summarized by the following statement:

These anamorphic lenses are, in our opinion, supplementary lens attachments as distinguished from supplementary lenses or lenses which are capable by themselves of producing undistorted images, either on film or on a projection screen.

The Customs Court held that the lenses were not projection lenses, relying on *Unimark Photo, Inc.* v. *United States*, 47 Cust. Ct. 75, C.D. 2283 (1961), as authority.

We think that the court misconstrued the *Unimark* case. It is true that the opinion in that case states that the supplementary lenses there involved did not fall within the photographic lens classifica-

tion because they would not of themselves form a photographic image at a given focal point. However, that statement is not directed to the controlling issue in the case.

Actually the "prime" issue in *Unimark* was "the question of entireties," whether the supplementary lenses were integral components of the motion picture cameras in which they were used and thus properly classifiable under the provision in paragraph 1551 of the Tariff Act of 1930, as modified, for motion-picture cameras and parts thereof. The court found that they were, stating:

[All] of the attachments are essential for the operation of these cameras in the performance of their manifold functions. Furthermore, the supplemental lenses in question cannot be used with any other motion-picture cameras. Their removal from these cameras renders the supplemental lenses useless. They have no independent function, they must be used, as heretofore described, in conjunction with the normal or prime lens.

The decision in the *Unimark* case is consistent with this court's holding in *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780 (1961), upon which primary reliance was put in *Unimark*. The merchandise in the *Garcia* case consisted of certain spools for so-called "Mitchell 300" spinning reels used by sport fishermen. The imported unit was made up of a reel mechanism on which was mounted one interchangeable spool and a second, but different, interchangeable spool enclosed in a plastic box. The reel was designed for two spools to enable it to perform both light and heavy fishing. On the basis of the record, this court in *Garcia* held the reel and two spools properly classified as an entirety.

Thus, *Unimark* is not controlling here. The case might be support for the proposition that supplemental lenses not capable of forming an undistorted image are not properly classifiable within paragraph 228(b), as modified, when their use is exclusively limited to the particular camera with which they are shipped. However, it does not support the proposition that such lenses by themselves are not "projection lenses" within the above paragraph.

Our attention has not been called to any decision dealing with what constitutes "projection lenses" under pargraph 228(b), as modified.[1] Nor are any decisions cited to aid in distinguishing between the meaning of that term and "photographic lenses" in a tariff sense. ■ However, the record before this court indicates that the present lenses are ground for use in photographing and projecting in connection with "wide screen films" and that they have been used principally with projectors rather than cameras and for no other use. In the light of

[1] *Hammel, Riglander & Co.* v. *United States*, 6 Treas. Dec. 217, T.D. 24280 (1903), a decision of the General Appraiser cited by the Government, does discuss "projection lenses" but it involves a different tariff act and is not particularly helpful here.

our interpretation of the *Unimark* case, that evidence leaves the presumption of correctness attending the collector's classification of the lenses as "projection lenses" unrebutted. In fact, it tends to reinforce that classification.

Since we find the collector's classification to be correct, it is unnecessary to discuss the remaining two issues posed above.

We have not overlooked appellant's oral argument that to sustain the collector's classification of the lenses as projection lenses would result in a stronger judgment for the Government than that of the Customs Court, which was made without affirming the collector's classification. However, no authority is cited in support of that argument and it is our view that agreement with the collector's classification is an entirely proper ground for sustaining the judgment of the Customs Court dismissing the protest.

The judgment of the Customs Court is *affirmed*.

---

SMITH, Judge, concurring.

In my view, the issue in this case turns primarily on whether the importer has failed to show by substantial evidence that the collector's classification was erroneous. I believe he has failed to meet his burden of proof and so concur in the result reached by the majority.

It is well settled that the burden is on the protestant to show by substantial evidence that (1) the collector's classification was erroneous, and (2) the asserted classification of the merchandise in issue is proper, e.g., *Novelty Import Co.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966); *Brown Boveri Corp.* v. *United States*, 53 CCPA 19, C.A.D. 870 (1966); *Edward Hyman Co.* v. *United States*, 52 CCPA 51, C.A.D. 857 (1965); and *United States* v. *Clayton Chemical & Packaging Co.*, 52 CCPA 111, C.A.D. 867 (1965). Moreover, it is quite clear that the classification of the merchandise by the collector carries with it a presumption of correctness, e.g., *Howland* v. *United States*, 53 CCPA 62, C.A.D. 878 (1966); *Gallagher & Ascher Co.* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964).

Our review of the issue of law thus raised requires us to determine whether, as a matter of law, appellant sustained this burden of proof.

The evidence in the record below consists of a stipulation of fact and two exhibits, illustrating the anamorphic lenses when used with a camera and with a projector, respectively. The pertinent portions of the stipulation are set forth in the majority opinion. This stipulation states that the "imported anamorphic lenses are mounted lenses which have been ground in such a manner as to permit the photographing and *projecting* of 'wide screen films.'" Appellant agreed that the im-

ported lenses are *used in conjunction with* standard or telephoto photographic lenses and *standard projection lenses.* Appellant stipulated that, with different adapters, the imported anamorphic lenses are used with *projectors,* "*the* lens formed by the anamorphic lens *functioning in conjunction with the standard projection lens enabling undistorted projection* of the wide screen film view." [Emphasis added.]

Appellant further stipulated that the imported anamorphic lenses do not replace standard photographic lenses when used with cameras, and do not replace standard projection lenses when used with projectors. Appellant agreed that the imported anamorphic lenses will not produce undistorted images, either on film or on a projection screen when used by themselves, and are not so used. Finally, of importance, appellant stated that the imported anamorphic lenses and other similar anamorphic lenses were, at the times of importation, *used more often with projectors* than with cameras and were used for no other purpose.

On the basis of these stipulated facts, it is my view that appellant's proofs are not legally sufficient to overcome the presumption of correctness which attaches to the collector's findings.

I agree with the majority that the Customs Court has misconstrued the applicability of *Unimark Photo, Inc.* v. *United States,* 47 Cust. Ct. 75, C.D. 2283 (1961) to the facts here. I do not, however, subscribe to what seems to me to be the majority's unnecessary observation that the "case might be support for the proposition that supplemental lenses not capable of forming an undistorted image are not properly classifiable within paragraph 228(b), as modified, when their use is exclusively limited to the particular camera with which they are shipped." The issue of the correctness of *Unimark* when applied to *different* fact situations is not before us. It is noted that *Unimark* has been widely relied upon by importers, the customs bar, and the Customs Court in various contexts, and should not be disturbed unless the issues therein are directly presented to us. See, e.g., the following cases in which the stated goods were stipulated to be similar in all material respects to those which were the subject of the *Unimark* case: *Mitsubishi International Corp.* v. *United States,* 52 Cust. Ct. 324, Abs. 68470 (1964) ("photo lenses") ; *Mitsubishi International Corp.* v. *United States,* 52 Cust. Ct. 319, Abs. 68450 (1964) ("photo lenses") ; *Suncoast Merchandise Corp.* v. *United States,* 52 Cust. Ct. 310, Abs. 68425 (1964) ("wide-angle and telephoto lenses") ; *Kanematsu New York. Inc.* v. *United States,* 51 Cust. Ct. 274, Abs. 68141 (1963) ("photo lenses") ; *Barnett Customs Brokers, Inc.* v. *United States,* 50 Cust. Ct. 296, Abs. 67711 (1963) ("wide-angle and telephoto lenses") ; *Kanematsu New York, Inc.* v. *United States,* 49 Cust. Ct. 321, Abs. 67256 (1962) ("wide-

angle and telephoto lenses") ; *Kanematsu New York, Inc.* v. *United States*, 49 Cust. Ct. 175, Abs. 66895 (1962) ("photo lenses") ; *Unimark Photo, Inc.* v. *United States*, 48 Cust. Ct. 316, Abs. 66397 (1962) ("wide-angle and telephoto supplementary lenses"). In each of these cases, claims of the importers were sustained and the merchandise in issue was dutiable under paragraph 1551, as modified, rather than paragraph 228(b). See also *Bushnell International, Inc.* v. *United States*, 49 Cust. Ct. 123, C.D. 2370 (1962), distinguishing *Unimark* as having no "influence over the disposition" there at bar since the goods in issue did not "* * * meet the requirements for classification as parts of cameras * * * ." 49 Cust. Ct. at 128.

Therefore, I would base the decision herein on the ground that the *Unimark* case is not applicable on its facts to the case before us and predicate our decision on the ground that the importer has failed to prove the collector's classification was wrong. Like the majority, I see no need to decide the merits of the appellant's other arguments.